## PHILIP GLASSER v. THE STATE.

### No. 6270.   Decided October 5, 1921.

**1.—Theft—Receiving Stolen Property—Accomplice—Principal—Conspiracy.**

If defendant's criminal acts relating to the transaction were all preliminary to the theft, he would have been no more than an accomplice; if, however, the defendant was a party to a conspiracy in pursuance of which property was stolen, and afterwards received by defendant, each conspirator performing a specific act, the consummation of the design would characterize defendant as a principal. Burow v. State 85 Tex. Crim. Rep., 133, and defendant being convicted of receiving stolen property, the verdict will be sustained.

**2.—Same—Manual Possession—Bill of Lading—Possession of Stolen Property.**

The possession of the bill of lading put the property under the control of the defendant and unless under our statute the manual possession of it was required, he, in receiving the bill of lading, received the property. Manual possession is not necessary.

**3.—Same—Possession—Recently Stolen Property—Sufficiency of the Evidence.**

Where defendant was found in possession of the property recently stolen, and explained the means by which he obtained it, but the evidence being otherwise sufficient to sustain the verdict, there is no reversible error.

**4.—Number of Jurors—Inadvertent Mistake—Order Nunc Pro Tunc.**

Where the indictment was presented by a grand jury composed of twelve men, legally empanelled, it was not rendered void by a mistake of the clerk in omitting from the record the names of three of the grand jurors, such defect being properly corrected by an order *nunc pro tunc.* Following Bennett v. State, 80 Texas Crim. Rep., 662, and other cases.

**5.—Same—Evidence—General Reputation—Witness Names Not On Indictment.**

Where it appeared from the record that defendant's general good reputation for honesty, etc., was established by several witnesses, there was no error in the refusal of the court to postpone the trial to secure character witnesses; nor was there any error in the fact that the names of the witnesses were not endorsed upon the indictment; besides the defendant had had ample time to converse with the State's witnesses. Following English v. State, 85 Texas Crim. Rep., 450, and other cases.

**6.—Same—Other Offenses—Evidence—Credibility of Witness.**

Where, upon trial of receiving stolen property, the defendant had testified in his own behalf, there was no error in admitting in evidence an indictment which charged him with theft in another transaction, for the purpose of affecting his credibility. Following Lights v. State, 21 Texas Crim. App., 313, and other cases.

**7.—Same—Remarks by Judge—Colloquy Between Court and Counsel.**

Where the bill of exceptions disclosed that upon the trial a colloquy between the Judge presiding and one of the defendant's attorneys occurred, in the course of which the Judge made the remark, "I want to say to counsel that he has a great many strictures against the court; that the court is going to give all his clients a fair trial." There was no reversible error, in the absence of any injury to the defendant. Following McGee v. State, 37 Texas Crim. Rep., 668, and other cases.

**8.—Argument of Counsel—Requested Charge—Practice in Trial Court.**

Where, upon trial of receiving stolen property, there was evidence of other offenses, but the court properly limited the same to the credibility of the accused, there was no reversible error in the argument of counsel in alluding to said testimony as to the number of casings stolen, in the absence of a requested charge to withdraw the same. Distinguishing Whitfill v. State, 75 Texas Crim. Rep., 1.

**9.—Same—Evidence—Conversation—Husband and Wife—Cross-Examination. tion.**

Where defendant's objection was to the evidence that the declaration of the wife of defendant was hearsay, and that testimony as to her part in the conversation was a violation of the statute inhibiting the use of the wife as a witness against her husband, but it appeared that the defendant had introduced a part of the conversation, he is not in position to complain if the whole conversation was developed by the State.

**10.—Same—Jury and Jury Law—Practice in Trial Court.**

It is the duty of the trial judge to keep the jury together for such reasonable time as, in his discretion is necessary to complete their deliberation, and his refusal to discharge them in the instant case manifested no abuse of his discretion and suggests no effort towards coercion. Following Dow v. State, 31 Texas Crim. Rep., 287, and other cases.

Appeal from the District Court of Eastland. Tried below before the Honorable E. A. Hill.

Appeal from a conviction of receiving stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Marks & Flaherty,* and *Burkett, Anderson & Orr,* for appellant.— On question of Argument of Counsel: Whitfill v. State, 169 S. W. Rep., 681.

On question of cross examination of wife: Ray v. State, 64 S. W. Rep., 1057; Wooddall v. State, 126 id., 591; Eads v. State, 170 id., 145.

On question of number of grand jurors; Maul v. State, 26 S. W. Rep., 199.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Upon question of receiving stolen property: Kaufman v. State, 159 S. W. Rep., 58.

On question of Principal: Simpson v. State, 196 S. W. Rep., 835. Dawson v. State, 41 S. W. Rep., 599, and cases cited in opinion.

MORROW, Presiding Judge.—The appellant was charged in separate counts with the offense of theft and having received stolen property. The second count alone was submitted to the jury.

The state used as a witness, on the promise of immunity, one De-Vries, who testified that he stole the property in pursuance of an agreement with the appellant and one, Sonduck, that they would do certain things facilitating the theft and that the property should be shipped by rail to Tulsa, Oklahoma, and there sold and the proceeds divided among the three. The stolen property consisted of a lot of pipe used in boring oil-wells, was valued at $3,000, was pointed out by DeVries to one Carlton, and by Carlton hauled to the town of Ranger and loaded into a car and shipped to Tulsa, Oklahoma, under a bill of lading issued to H. B. Sanders. The appellant was found in possession of the bill of lading while the property was still in the hands of the railroad company and made declarations concerning his connection with the transaction to the effect that he purchased the property from H. B. Sanders without knowledge or notice of the fact that it was stolen.

Neither Sanders nor Sonduck was used as a witness. The testimony of DeVries was attacked by proof of his connection with various thefts and his charge by indictment of other thefts and promises of immunity.

There was evidence that the bill of lading came into possession of the appellant while he was in the City of Dallas, Texas, where his wife was confined in a sanitarium, and it was while he was at Dallas that he was found in possession of the bill of lading and made the declaration

referred to. Whether, under the evidence, the appellant's connection with the theft was that of an accomplice or a principal therein were matters which might, with propriety, have been determined by the jury. This, however, was not demanded, and so far as the evidence is concerned, the question for review is whether or not there is sufficient evidence, if believed by the jury, to establish appellant's guilt as a receiver of the stolen property. In deciding this question, it is necessary to keep in mind the law whereby- if appellant's sole connection with the theft was that of an accomplice or a principal, his conviction as a receiver could not stand. Kolb v. State, 88 Texas Crim. Rep., 593, 228 S. W. Rep., 210; Simpson v. State, 81 Texas Crim. Rep., 389, 196 S. W. Rep., 835; Burow v. State, 85 Texas Crim. Rep., 133, 210 S. W. Rep., 805; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W. Rep., 1046. In other words, if appellant's criminal acts relating to the transaction were all preliminary to the theft, he would have been no more than an accomplice thereto. If, however, the appellant was a party to a conspiracy in pursuance of which property was stolen, each conspirator performing a specific part, the consummation of the design would characterize appellant as a principal. Smith v. State, 21 Texas Crim. App., 108; Burow v. State, 85 Texas Crim. Rep., 133, 210 S. W. Rep., 805.

DeVries, in his testimony to the effect that he stole the property, is corroborated by Carlton who transported it to the car and was paid by appellant, but this he explains in a manner consistent with his innocence, claiming that Carlton was indebted to him and that by arrangement with his business associate, Sonduck, appellant paid the charges as a means of collecting his debt from Carlton.

A witness, testifying to the interview with appellant in Dallas after the discovery of the theft, imputed to the appellant a statement in substance that he bought a string of pipe from one Sanders, who came to him stating that he had a car of pipe to sell; that arrangement had been made with Carlton to load it on the car; that he was afterwards informed by Sonduck, whom he had sent to inquire whether the pipe was loaded, that the bill of lading was at hand and paid Sanders part of the money—$400. Testifying upon the stand upon this phase of the case, appellant said, in substance, that previous to the transaction in question he had formed a business arrangement with one, Sonduck, and one, Weinert, for the purpose of dealing in various kinds of used and abandoned property, including pipe, appellant furnishing the funds in the main; that Weinert had absconded with a large portion of the funds; that he was advised by Sonduck that a friend of his named Sanders had a string of pipe on hand which could be bought at a price very favorable to the purchaser; that Sonduck introduced appellant and Sanders, and Sanders insisted that, owing to his friendship with Sonduck and the low price for which he was to part with the property, he would make the sale to Sonduck alone; that leaving Sonduck to

conclude the deal with Sanders, appellant went to Dallas, later receiving a letter from Sonduck and two bills of lading; that he desired the bills of lading as protection because of his loss through his partner Weinert. In the conversation with Sonduck, according to the appellant, it was stated that DeVries would point out the property. Appellant disclaimed any arrangement with DeVries, or conspiracy, or knowledge that the pipe was stolen.

The evidence showed that the bills of lading to Sanders were so drawn that the railroad company would deliver the property to the holder of the bills of lading.

As stated above, Sonduck did not testify nor did Sanders, and there was evidence introduced that the bill of lading was obtained by Sonduck, he using the name of Sanders. The possession of the bill of lading put the property under the control of the appellant, and unless under our statute the manual possession of it was required, he in receiving the bill of lading, received the property. Manual possession is declared unnecessary by many authorities. See Bishop's New Criminal Law, Vol. 2, page 1139; Cyc. of Law & Proc. Vol. 34, page 517; Huggins v. State, 41 Ala., 399; State v. Stroud, 95 N. C., 31.

The appellant having been found in possession of the property in the manner stated and having explained the means by which he obtained it, the conclusion of the jury implied by the verdict that he was a receiver of the property after it was stolen and not an accomplice or principal in the original taking is not unauthorized. Likewise, in our opinion, the jury's finding that, while the appellant was not connected with the original taking, he was aware of the fact that the property was stolen by DeVries, is supported by the evidence.

There was conflict between the appellant's testimony and that of DeVries touching appellant's connection with the original taking. Considering the discrediting evidence against DeVries and the necessity under the law for his corroboration, the rejection of that part of it which connected appellant with the original taking was not unwarranted. Appellant's possession of the bills of lading was conceded. Other circumstances, notably the disparity between the amount of money with which the appellant actually parted and the value of the property and the knowledge that appellant obtained through other transactions with DeVries that the latter was a thief were sufficient to justify the jury in concluding that appellant's declaration that he was unaware of the fact that the property was stolen was not true.

The indictment having been presented by a grand jury composed of twelve men legally impaneled was not rendered void by the mistake of the clerk in omitting from the record the names of three of the grand jurors. This defect in the record was properly corrected by the order *nunc pro tunc*. Burnett v. State, 14 Texas Rep., 455; Rhodes v. State, 29 Texas Rep., 188; Bennett v. State, 80 Texas Crim. Rep., 662;

Barnes v. State, 230 S. W. Rep., 986; Wichita Valley Co. v. Peery, 88 Texas, 382; Chestnut v. Pollard, 77 Texas, 208.

No error is disclosed by the bill complaining of the refusal of the court to postpone the trial to secure the attendance of witnesses to his good reputation for truth and veracity and honesty and fair-dealing, it apeapring from the qualification thereof and from the record that his good reputation in these respects was established by several witnesses, among them a district judge, without controversy. It appearing from the same bill that appellant was given ample time to converse with the State's witnesses before they testified, the fact that their names are not endorsed upon the indictment was not material. · Polk v. State, 69 Texas Crim. Rep., 53, 152 S. W. Rep., 907; Branch's Tex. Ann. Penal Code, Sec. 514 and cases listed; Fehr v. State, 36 Texas Crim. Rep., 96; Skipworth v. State, 8 Texas Crim. App., 135; English v. State, 85 Texas Crim. Rep., 450.

There is no merit in the bill complaining of the introduction in evidence against appellant of the indictment charging him with theft in another transaction, he having antecedent thereto, in this case, testified as a witness in his own behalf. Admissibility of indictments in such cases for other felonies on the issue of credibility of the accused as a witness has been asserted in numerous occasions in the opinions of this court. Lights v. State, 21 Texas Crim. App., 313; Bratton v. State, 34 Texas Crim. Rep., 477; Lee v. State, 45 Texas Crim. Rep., 52; Branch's Ann. Tex. Penal Code, Sec. 167.

One of the bills discloses that upon the trial a colloquy of some length between the judge presiding and one of the defendant's attorneys in the course of which the judge made remarks which are complained of. These were set out in great length in several bills of exceptions, stress being laid upon a statement in these words:

"I want to say to counsel that he has a great many strictures against the court; that the court is going to give all his clients a fair trial."

The use of the word "strictures" is particularly emphasized as prejudicial. Our statutes forbids the trial judge, upon ruling upon evidence, to comment upon its weight, and adds:

"Nor shall he, at any state of the proceedings, previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."

Explaining the bill the court said, in substance, that throughout the trial the counsel had persistently interposed trivial objections to the introduction of evidence obviously admissible, thereby materially obstructing the progress of the trial, portraying by the tone of his voice and facial expressions and mannerisms feeling against the court. While the colloquy revealed by the record added nothing to the dignity and decorum of the trial, the remarks of the judge were not, in our judgment, violative of the statute mentioned, nor were they calculated to prejudicially affect the case of the accused. McGee v. State, 37

Texas Crim. Rep. 668; Harrell v. State, 39 Texas Crim. Rep., 204. Even when the court makes a comment inhibited by the statute, if it is not harmful to the accused, it does not justify a reversal of the judgment. English v. State, 85 Texas Crim. Rep., 457; Williams v. State, 148 S. W. Rep., 768.

In Bill No. 7 complaint is made of the refusal of the court to instruct the jury to disregard the remarks of one of the counsel "wherein he discussed the alleged taking of sixty-two joints of casing from the Madding lease and fifty-four joints of casing from the Barnes lease and indictment therefor as the defendant was not on trial for those transactions." It appears that two indictments were introduced against the appellant, in each of which he was charged with the theft and of fraudulent receiving of oil-well casing.

There was also verbal testimony to the effect that at about the same time that the offense under investigation was committed, the appellant received two other cars of stolen casing. In a general charge the jury was instructed that the indictments could be considered alone upon the credibility of the accused and that the evidence of receiving other property was limited to the question of guilty knowledge in the instant case. Appellant insists that the expressions in the case of Whitfill v. State, 75 Texas Crim. Rep., 1 (169 S. W. Rep., 682) support his contention that error requiring reversal was disclosed. Whitfill was convicted of burglary. He testified as a witness in his own behalf, and the state introduced an indictment for theft on the issue of his credibility. Counsel for the state, commenting upon this indictment for another offense, said: "It is a strong circumstance to show his guilt in this case." Counsel for the appellant at the time mentioned privately to the judge his objection to this argument but declined to interrupt the attorney for the prosecution and make the objection in an open manner. The court, in that case as in this one, charged the jury that the indictments must be considered upon the issue of credibility alone. Whitfill's case was affirmed, though the court said it regarded the argument as improper, but considered the failure of the appellant to make an open objection to it inadequate to require the court to take notice of it.

In the case before us, it does not appear that any objection was made to the argument but that the special charge mentioned was requested. Insofar as the special charge was applicable, its substance was apparently embraced in the main charge wherein the jury was instructed that the indictments in evidence were usable alone upon the appellant's credibility as a witness and that the evidence of receipt of other stolen property was to be confined to the issue of intent and guilty knowledge. The fact that the property was stolen and shipped and the bills of lading put in possession of the appellant was conceded. The crucial question in the case related to the intent and knowledge with which the appellant acted. In his declaration and testimony, he disclaimed any guilty knowledge or intent. The burden was primarily

upon the state to establish the fact that he knew the property was stolen. In discharging this burden the evidence of other similar transactions between the same parties and near the same time was available. It was original evidence upon the issue of guilty knowledge. Wharton's Crim. Evidence, Vol. 1, p. 135; Fry v. State, 83 Texas Crim. Rep. 507; Hogg v. State, 66 Texas Crim. Rep., 252, 146 S. W. Rep., 196; Morgan v. State, 31 Texas Crim. Rep., 9; Henderson v. State, 76 Texas Crim. Rep:, 66, 172 S. W. Rep., 794; Hanks v. State, 55 Texas Crim. Rep., 451, 117 S. W. Rep., 151.

Via, a state's witness, after testifying to a conversation with appellant, admitting his possession of the bills of lading to the stolen property, was, on cross-examination, asked various questions which, in his qualification of the bills of exceptions relating thereto the trial judge interpreted as an attempt upon the part of the defense to show that the witness had sought a bribe from the appellant. In the course of the cross-examination it was shown that the witness had seen the appellant and his wife on certain occasions, and had a conversation with the appellant in the presence of his wife, and in the development of this evidence, among others, these questions were asked:

"Didn't you ask Mr. Glasser, in the presence of his wife, how much money he could raise if he could get you out of this scrape? What did you go there for if it was not for that? Q. Did you talk there about a man named DeVoe? A. Yes, sir. Q. And you told him you had seen DeVoe once and was to see him again? A. No, sir.

And further inquiry on cross-examination developed that in the presence of appellant's wife, the witness had told the appellant that DeVoe had offered the witness first $300 and then $1,000 to release the appellant. He was then asked: "You told him to bring the $1,000 next Sunday and in case he did that there would be nothing of the whole case? Q. Was this conversation in the presence of his wife? A. Yes, sir, his wife was pleading all the time for her husband.

On re-direct examination the witness was asked to repeat the entire conversation with reference to the transaction with DeVoe. Responding the witness said that appellant asked if the witness had seen DeVoe and what DeVoe offered him, and that he told appellant that he offered him first $300 and then $1,000; that the wife then interposed and said that it would kill her if her husband should go to the penitentiary and asked the witness if he could not do something, and she said: "Mr. DeVoe has been to see you, as you say. How much did he offer you?," to which the witness replied: "First $300 and then $1,000." She said: "You wouldn't take it?" The basis of the appellant's objection, as disclosed by the bill, was that the declarations of the wife were hearsay and that her part in the conversation was a violation of the statute inhibiting the use of the wife as a witness against her husband. In our opinion, the appellant having introduced a part of the conversation, is not in a position to complain if the whole conversation was developed

by the state. The statute, Article 811 of the Code of Crim. Proc., declares that: "When part of the declaration or conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other." The procedure seems to have been within the terms of this statute.

The appellant, by his cross-examination of Via, manifestly sought to discredit him and to lay predicate for his impeachment. By the inquiries made, and the answers solicited, he developed the fact that at the conversation his wife was present and participated. What she said under these circumstances, being in the presence of a third party, was not privileged. Cole v. State, 51 Texas Crim. Rep. 93; Richards v. State, 55 Texas Crim. Rep. 278; Hampton v. State, 78 Texas Crim. Rep., 639, 183 S. W. Rep., 890; Richards v. State, 11 S. W. Rep., 587. The materiality of the whole conversation, as bearing upon any discrediting influence that the cross-examination may have had, appears obvious, and it being material and within the statute mentioned, the fact that the wife participated did not require its exclusion.

The foreman of the jury, after it had been in retirement some twenty-four hours, sent to the court, a written statement advising the court that they were divided nine to three and that an agreement was not possible and requested a discharge. At the same time one of the jurors sent an individual request to be permitted to go home at night that he might be present with his wife and her two children, she having no one else to stay with. When these communications were delivered, the trial judge remarked to the officer that he might tell the jury that it was unnecessary to communicate with him further unless they reached the verdict or were called for. The bills complaining of this matter did not affirmatively show whether the message was communicated to the jury or not. The court, in explaining the bill, said that the jury, in his opinion, had not sufficiently deliberated upon the case to justify their release. It was the duty of the trial judge to keep the jury together for such reasonable time as, in his discretion, was necessary to complete their deliberations. His refusal to discharge them, in the instant case, manifested no abuse of his discretion and suggests no effort to coerce them. We cannot assume, in the absence of an affirmative showing to that effect in the bill, that the message of the court was delivered to the jury. Even if the contrary were true, we discern in it nothing subversive of appellant's rights. Dow v. State, 31 Texas Crim. Rep., 287; Carlisle v. State, 56 S. W. Rep., 366; State v. Place, 11 Amer. & Eng. Ann. Cases, note p. 1135; Brady v. State, 74 S. W. Rep., 771.

No errors appearing, the judgment is affirmed.

*Affirmed.*