BILL LAWLER v. THE STATE.

No. 11323. Delivered December 21, 1928.
Rehearing denied June 23, 1928.

The opinion states the case.

*H. C. Bishop* of Hubbard City, and *Collins & Dupree* of Hillsboro for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for 45 years.

Appellant was the son-in-law of Tom Motley, the deceased. In December, 1926, appellant, his wife and three small children were living together. Some time during the month of December, while appellant was away from home, Beulah Lawler, his wife, went to Oklahoma in a stolen car with a man by the name of Bill Hickman. The children of appellant and his wife were left with appellant's parents. About December 18th, appellant's wife returned to Texas and went to the home of her father, the deceased, where she remained. In the meantime, Hickman had been indicted in Navarro county on a charge of automobile theft and his trial set at Corsicana for February 8th, 1927. Appellant made numerous visits to the home of deceased in an effort to see and talk to his wife. Generally, he stopped in the road two or three hundred yards from the house of deceased, and on several occasions he carried other parties with him, who, acting in his behalf, went to the house of deceased in an effort to bring about a meeting between appellant and his wife. Deceased was generally at home on the occasion of these visits, and there was always present a gun above the front door. On the 30th of January, 1927, at about seven o'clock p. m., deceased, Mrs. Motley, his wife, and a small child were sitting in what was termed the fireplace room of their residence when appellant appeared, a difficulty ensued and deceased was fatally wounded. On the occasion of the homicide deceased owned a Winchester rifle and a 32 calibre pistol, while appellant carried a 45 calibre pistol. Deceased received two wounds in the body, which were not fatal, and a wound in the head from a 32 calibre pistol, which resulted in death. Appellant received a wound in the body.

The state's version of the homicide was, in substance, as follows: On the night of the 30th of January, 1927, appellant went to the home of deceased, broke into the house and shot deceased. After appellant had fired three shots at deceased, Mrs. Motley, wife of deceased, who was in the room at the time, ran across the highway to a neighbor's house, which was a short distance from her home. As she was returning, appellant, who had been wounded and was lying near the highway, said: "The old man is dead, if he ain't he will be in a few minutes, for I shot him in the head with his own gun." Entering the room where the shooting had taken place, Mrs. Motley found her husband sitting by the fireplace fatally wounded. His face was black and covered with blood, and there were pools of blood on the floor. In this situation her husband said, "He got me." Deceased later died from the wound he had received in the head.

Appellant's testimony concerning the immediate transaction which resulted in the homicide was, in substance, as follows: On the occasion of the homicide, appellant went to the home of deceased for the purpose of requesting his (appellant's) wife to leave the country with him, in order that their children might escape the shame and disgrace that would result from her appearance as a witness in the Hickman trial. When he reached the home of deceased he knocked on the door, accused asked him who was there and he told deceased that it was Bill. Deceased then opened the door and pointed a gun at appellant. Appellant grasped the gun, and deceased shot him. As he shot appellant, deceased closed the door. Appellant fell against the door and pushed it open. As the door opened, appellant pulled his pistol and grasped the pistol of deceased with his left hand. A scuffle ensued, in which appellant twisted the arm of deceased in a manner that placed the pistol of deceased against the head of deceased, and in such position the gun was accidentally fired. Deceased fell over a chair and, as he was endeavoring to get up, he pointed his pistol at appellant. Appellant struck deceased on the head with a Winchester, which belonged to deceased, and deceased dropped his pistol. Appellant didn't fire his pistol until deceased had shot him. When appellant fired at deceased he was frightened and thought deceased was going to shoot him again.

Appellant's position that the court should have charged the law applicable to circumstantial evidence is not tenable. In view of the fact that appellant admitted that he shot deceased, the charge against him did not depend wholly upon circumstantial evidence. A charge on circumstantial evidence is not required where the testimony is

not wholly circumstantial. Branch's Annotated Penal Code, Section 1874; High v. State, 112 S. W. 939.

In support of his theory that he went to the home of deceased for the purpose of requesting his wife to leave the country with him, in order that their children might escape the shame and disgrace that would result from her appearance as a witness in the Hickman trial, appellant offered to prove by his father that he, appellant, was kind and affectionate toward his children and desired that they be held in high esteem by their friends, neighbors and the public generally. The qualification attached to bill of exception Number 17 shows that the witness testified that appellant was a very devoted father to his children, and that prior to the homicide appellant appeared to be greatly worried. In this condition, the bill fails to manifest reversible error.

Appellant offered to prove by Dr. Hill, one of his witnesses, that, after the fatal shooting and after he had reached the home of his father at Dawson, he described the difficulty, which resulted in the fatal shooting, to the witness and others. Bill of exception Number 19 shows that the witness would have detailed the statements made to him by appellant, substantially, as testified to by appellant on his trial. Appellant contends that the statements were res gestae, and consistent with his testimony on the trial and explanatory of the statements attributed to him by Mrs. Motley while he was lying near the highway. The qualification attached to the bill shows that no witness testified, as shown in the bill, that the statements were made by appellant about forty-five minutes after the shooting; that the testimony of Mrs. Motley showed that she was in the room with deceased at the time that appellant entered and, that after appellant had fired three shots, she left the room and went to the home of Mr. Priddy, which was about two hundred yards from where the difficulty occurred; that a short while after reaching the home of Priddy she went back to her home; that Priddy after hearing the shots, called three doctors over the telephone and then went to the point where appellant was lying on the highway; that it was approximately twenty minutes after the witness heard the shots before he went to the point where appellant was found; that, after finding appellant, Priddy went home and shortly thereafter came back to appellant; that when he returned, one Barrington took charge of appellant and carried him to the town of Hubbard, and then to the home of appellant's father in Dawson; that it was about three and a half miles from the home of deceased to Hubbard, and six miles

from Hubbard to Dawson; that the record does not show how far it was from the home of Doctor Hill to the house of the father of appellant, and does not show when Doctor Hill was called to said house. As qualified, the bill fails to show that the statements attributed to appellant were res gestae. The statements made by appellant to Mrs. Motley were res gestae and did not in contemplation of law constitute detailed declarations of appellant. Proof by the state of res gestae statements of the accused does not, within itself, afford a predicate for the introduction of self-deserving declarations. The statement made by appellant to Mrs. Motley was full and complete. Gibson v. State, 5 S. W. 314. Where the previous acts or declarations which are sought to be explained are full and complete proof of prior or later acts or declarations is not rendered admissible on the sole ground that the former were admitted in evidence. Branch's Annotated Penal Code, Section 92; Atkinson v. State, 30 S. W. 64.

Bill of exception Number 8 presents the following occurrence: Mrs. Motley, wife of deceased, testified that on an occasion when certain parties came to her home at the behest of appellant, Beulah Lawler, the wife of appellant, stated to them, in substance, in the absence of appellant that she was done with appellant forever, that she didn't want to talk to him, and that if appellant carried her away from there he would carry her in a black box. The qualification attached to the bill shows that, on cross-examination, appellant elicited from Mrs. Motley the fact that said parties stated to appellant's wife that appellant wanted to talk to her; that on redirect examination the state asked Mrs. Motley what reply appellant's wife made to said parties; and that when she gave the testimony complained of in response to the state's question, the court instructed the jury not to consider such testimony. In this condition the bill fails to manifest reversible error.

Mrs. Motley, was permitted to testify, over objection of appellant, that deceased stated to a Mr. Zennan, in the absence of appellant, that he, deceased, had nothing to do with the matter of his daughter talking to appellant, and that he had no objection to her doing so, if she so desired. In qualifying bill Number 11, the court states that the record shows that deceased made substantially the same statement to appellant on several occasions. Although the testimony complained of was hearsay, in view of the fact that the same testimony appears in the record, without objection, reversible error is not manifested by the bill.

Mrs. Motley, a witness for the state, testified, on redirect examination that prior to the homicide appellant's wife stated to appellant that he "had trapped her all he was going to"; that, in substance, she would give him a divorce and let him take the children or she would take them; that she never expected to live with him again; that he had mistreated her and "beat her up"; and if he ever took her away from her father's home it would be in a "black box." Appellant, as shown by his bill of exception Number 13, moved to exclude this testimony on the ground that the statements were violative of the statute which prohibited the wife from testifying against her husband. The statements were made in the presence of Mrs. Motley. Being made in the presence of a third party they ceased to be privileged. Statements made by the husband and wife in the presence of others do not come within the rule of privileged communications. Mrs. Motley was properly permitted to testify to the statements as against the objection lodged by appellant. Prater v. State, 284 S. W. 965; Gilmore v. State, 241 S. W. 492; Glasser v. State, 233 S. W. 969; Cole v. State, 101 S. W. 218.

Bill of exception Number 36 shows that the state proved by appellant on cross-examination that about two hours before the homicide he engaged in a "crap" game. Appellant's objection to the testimony was that it was proof of "an additional and extraneous offense and collateral crime and matter," and that it was prejudicial. We are unable to determine from the bill whether the matter inquired about by the state was material and relevant to any issue in the case. There being no facts stated in the bill which affirmatively show that the testimony was not relevant and material, we must indulge the legal presumption that the ruling of the trial court in admitting the testimony was correct.

As shown by bill of exception Number 37, for the purpose of rebutting the inference that his wife had left him because he had mistreated her, appellant offered in evidence a letter written by his wife to Bill Hickman, which tended to show that there was an illicit love affair between her and Hickman. Hickman and appellant's wife were not used as witnesses. As a predicate for the introduction of the letter, appellant identified the handwriting and signature of his wife, and testified that Hickman had delivered the letter in question to him. The bill does not show whether the letter was delivered to appellant before or after the homicide. The state objected to the introduction of the letter on the ground that it was "immaterial and hearsay, and had no bearing upon any issue in the

case, and was an attempt to bring in an extraneous and immaterial matter occurring between the wife of the defendant and Bill Hickman, concerning which the deceased, Motley, is not shown to have any connection whatever, and because the statement being in the form of a letter was hearsay and inadmissible as such." The trial court sustained the objection and qualified appellant's bill by referring to the statement of facts to show that after appellant had asked Mrs. Motley, on cross-examination, about a visit of appellant to the home of deceased in which appellant asked his (appellant's) wife to talk to him, the state asked said witness, on redirect examination, as to the statements made by appellant's wife to him on the occasion in question.

The contents of the letter were hearsay and, therefore, inadmissible.

We have carefully examined every contention made by appellant and find no error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant relies upon the same grounds originally urged as reasons why the judgment should be reversed. One of the points stressed with particular emphasis is the one discussed in paragraph six of our former opinion relating to the exclusion of evidence from Dr. Hill of statements made to him by appellant. This is the only question we feel called upon to further consider. Appellant again insists that the declarations made by him to Dr. Hill were admissible as res gestae of the killing. In deciding this contention against appellant our views have not been changed. It is further claimed that the statements made to Dr. Hill should have been admitted under the provisions of the last clause of Art. 728, C. C. P. as being explanatory of the declarations proven against him by the state through the witnesses Mrs. Motley and Bob Priddy. The entire article reads as follows:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as, when a letter is read, all letters on

the same subject between the same parties may be given. *When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."*

The first portion of said article is not difficult of application but some confusion has arisen with reference to the application of the underscored sentence.

The statement made by appellant to Mrs. Motley and Priddy was unquestionably strictly res gestae. The witnesses were together at the time appellant made it. Mrs. Motley's version of it was that appellant said "The old man is dead, if he ain't he will be in a few minutes for I shot him in the head with his own gun." Priddy's version was that appellant said, "I am going to die and the old man is done dead; I know he is dead, I took his own gun and brought it around and pushed it against his head and shot."

Appellant proposed to prove—upon the theory that it was explanatory of the res gestae declarations put in evidence by the state— that he made a subsequent statement to Dr. Hill which was not res gestae, as follows:

"* * * that the deceased was shot in the head, and that he was shot while the defendant had a hold of the hand in which the deceased held the pistol, and while they were scuffling, and while defendant was attempting to keep the deceased from pointing the pistol at him and shooting him again. That the deceased, while his hand was raised to the left and somewhat above the deceased's head, stumbled over a chair and as he fell over the chair, he fired the pistol himself, and that defendant received a powder burn from the explosion, * * * and that defendant did not fire the shot which inflicted the fatal wound of the deceased."

Because of some apparent confusion in our own decisions upon the point we will for the time being discuss the question as though the statement made by appellant to Dr. Hill was "explanatory" and not "contradictory" of the res gestae declarations. Could the res gestae of the transaction be impaired or explained by the subsequent *non res gestae* statement to Dr. Hill? In Greene v. State, 17 Tex. Cr. R. 395 no question of res gestae was involved. In that case accused made a confession to a justice of the peace upon which confession the state relied for conviction. The next day after making the confession the same justice of the peace held an inquest at which accused made a statement in writing. It was held that the

latter statement was admissible in explanation of the confession. In construing the clause of the statute, application of which is now invoked, Judge Wilson said:

"The article expands the common law rule * * * but * * * does not restrict the explanatory act, declaration, conversation or writing to the *time* when the act, declaration, conversation or writing sought to be explained occurred, but extends the rule to a full understanding of, or to explain the acts or statements introduced in evidence by the adverse party, although the same may have transpired at a different time, and at a time so remote even as to not be admissible as res gestae."

In connection with this statement it must again be stressed that the declaration sought to be explained in Greene's case was not res gestae; that such fact was regarded as significant by the great jurists then composing this court—Judges Wilson, White and Hurt—is apparent from the language in the opinions shortly following Greene's case, which was decided in 1885. Two years later the decision in Gibson's case, (23 Tex. Cr. R. 414, 5 S. W. 314) was rendered. In that case an effort was made by accused to prove what she said to a witness subsequent to the offense as explaining or modifying her res gestae declarations put in evidence by the state. It was insisted that the subsequent statement was admissible under the rule announced in Greene's case (supra). Judge Hurt writing in the Gibson case said there was no analogy between it and the Greene case, and after quoting the language of the last clause of what is now Art. 728 C. C. P., used this language:

"In the case in hand the State did not introduce in evidence a detailed declaration, a detailed conversation, or acts of the defendant. It confined the witnesses to the remarks and acts of the participants as they were made and occurred at the very time of the transaction, constituting strictly res gestae; the transaction was simply introduced as it actually occurred,—as it spoke through the acts and words of the parties engaged. If the position of the appellant be correct, in all cases in which the State introduces in evidence a remark or act of the accused, though made and done at the very time the offense is committed, the accused would have the right to introduce any and all statements made by him at any subsequent time. To such a doctrine this court cannot consent."

Only a year later the same court had under consideration the Bonnard case (25 Tex. Cr R. 173) where the state had proved against accused admissions which were not res gestae. Following

Greene's case it was held that the subsequent statements were admissible as explanatory of the admissions introduced by the state. Judge Wilson in writing in the Bonnard case seems to have expressly recognized the rule in Gibson's case as correct for in the Bonnard opinion he says:

"This case is not analogous to the Lilly Gibson case, 23 Tex. Cr. App. 414, in this particular."

It is plain that the court as then constituted clearly recognized a distinction where the declaration or act proved by the state was *strictly res gestae* as not falling within the statute in that the thing proven as res gestae was not to be regarded as a "detailed act, declaration, conversation, or writing" mentioned in the statute. This distinction seems to have been lost sight of in some of the subsequent decisions. Without reviewing them it may be stated that Rainey v. State, 20 Tex. Cr. R. 455; Rogers v. State, 26 Tex. Cr. R. 404; Wood v. State, 28 Tex. Cr. R. 61; Smith v. State, 46 Tex. Cr. R. 267; Burnett v. State, 83 Tex. Cr. R. 97; Williams v. State, 89 Tex. Cr. R. 334; Atkinson v. State, 34 Tex. Cr. R. 424 all follow Greene's case but in none of them was a *res gestae* statement involved. In Pratt v. State, 53 Tex. Cr. R. 281, the declaration offered by the state appears to have been res gestae but the case seems to have been decided without allusion to that question. We regard the Gibson case as announcing a correct rule of evidence and as being decisive against appellant in the present case. As has often been said a *res gestae* act or declaration is not the witness speaking so much as the event speaking through the witness. It is admissible for or against accused. A rule regarding it must be one which works alike fair to the accused and the state. If one on trial should prove a strictly res gestae statement by his adversary favorable to accused it would be manifestly unjust and, as we believe, violative of the rules of evidence to admit a subsequent hearsay declaration of such adversary made at another time and to another party which would impair, impeach or contradict the declaration which was strictly res gestae; on the other hand if the state should introduce against accused a *strictly res gestae* act or declaration of his it would we think likewise be violative of the rules of evidence to permit accused to break the force of the res gestae act or declaration by proof of a subsequent self-serving declaration which was no part of the res gestae and no part of the same conversation introduced by the state.

Thus far we have discussed the question as though the testimony offered through Dr. Hill was "explanatory" of the res gestae state-

ment proved by the state. In our judgment it was not explanatory but purely contradictory. In the one appellant stated that he shot deceased with the latter's own pistol; in the other he reported to Dr. Hill that the killing was accidental as a result of a scuffle between appellant and the deceased in which deceased shot himself. We are cited to no authority and are aware of none which holds that under the guise of "explanation" one accused of crime may directly *contradict* a res gestae declaration, by one subsequently made which is purely self-serving. In reviewing the authorities construing the statute in question we have found none which goes to the extent sought by appellant in the instant case.

The motion for rehearing is overruled.

*Overruled.*

### CONCURRING OPINION.

LATTIMORE, JUDGE.—I have no doubt of the inadmissibility of the subsequent statement of appellant because of its self-serving character, and because not in any sense explanatory of the statements of appellant introduced by the state, but I am not fully satisfied that the rejection can be justified on the ground that the statements put in evidence by the state were res gestae. The motion for rehearing is properly overruled.