### F. W. ANDERSON v. THE STATE.

No. 5212.  Decided June 11, 1919.

**Murder—Principal—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder, the evidence was circumstantial, there being no direct proof that the defendant took part in the homicide, and the inference drawn from the existence of the fact that he acted as a principal could only be made from the circumstances in the case, the court's failure to charge on circumstantial evidence duly excepted to at the time before the charge was given was reversible error.  Following Lesly v. State, 42 Texas Crim. Rep., 65; Early v. State, 50 Texas Crim. Rep., 344, and other cases.  Distinguishing Dennis v. State, 71 Texas Crim. Rep., 163.

Appeal from the District Court of Jones.  Tried below before the Hon. W. R. Chapman.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Pope & Stinson* and *Chambers & Brooks* for appellant.—On question of circumstantial evidence: Pizana v. State, 81 Texas Crim. Rep., 81, 193 S. W. Rep., 671; Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168; Burnam v. State, 61 Texas Crim. Rep., 616, 135 S. W. Rep., 1175; Hunt v. State, 7 Texas Crim. App., 212; Early v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

. MORROW, JUDGE.—The judgment appealed from condemned appellant to confinement in the penitentiary for a period of fifty years for the offense of murder.

The appellant was driving an automobile along the public road in the direction of his home, accompanied by his son.  Immediately before the homicide the deceased, Otto Smith, his brother Will Smith, and his cousin Tom Smith, who had been traveling in a buggy along the same road going north in the direction of their home, were in their buggy in front of the house of a neighbor.  The son of appellant was called Ray Anderson.

From the State witnesses it appeared that deceased lived upon appellant's farm and that on the day preceding the difficulty, in a quarrel, begun with the brother of deceased, he interferred and threatened to whip appellant and that after leaving the premises the appellant said: "This ain't settled; I will get you." On the morning of the day of the homicide deceased and. his brother went in their buggy in the direction of appellant's house and when about two hundred yards therefrom they saw appellant and his son, the latter carrying a gun and the former a stick or farm implement; that some harsh words took place and the deceased and his brother did not pass appellant's house, but taking another route, went to the town of Anson where they subsequently, about nine or ten o'clock in the morning, saw appellant. The circumstances indicate that he left Anson sometime before the deceased and his brother and that they, on their return to their home, which was on the same road, about one and a half miles north of the home of appellant, borrowed a shotgun and shells and passed appellant's house during his absence and that they stopped at the home of a neighbor who lived on the same road about midway between the home of the deceased and the home of appellant. While their buggy was standing on the side of the road and they were in conversation with this neighbor an automobile was seen coming from a northern direction and traveling rapidly, about thirty-five miles an hour, "but not going so fast as it went by." As the automobile approached, the deceased and his brother and cousin, who were with him in the buggy, began getting out of the buggy, and one of them said on the witness stand: "When they get in three or four feet of us Ray Anderson was sitting with his feet kinder up on the wind-shield and his gun down this way. Old man Anderson, (the appellant) was driving the car. He was on the left side and Ray was on the south side next to the buggy. When I first noticed the gun they were right near me. It was sitting there by the side of him and when he was in three or four feet of us just came up and shot. Just went down and brought the gun up with both hands and fired as they passed by. I judge they passed within four or five feet of me. When he shot he stuck the gun out from under the top of the car." The gun which was in the buggy with the deceased was also fired, the two shots being simultaneous. The State's witness, deceased's brother, claimed that he fired accidentally and that the discharge went into the ground. It was shown by the sheriff's testimony, however, that he examined the appellant's car soon after the homicide and its appearance indicated that a shot had been fired into it. The witnesses agreed in their statements that they did not see the appellant or hear him say anything to his son or do anything except to drive the car along the public road at the time of the homicide. Appellant's son lived some distance from the residence of his father

and the record offers no explanation of his presence at his father's home.

The court instructed the jury on the law of principals, embracing the theory of a conspiracy as well as that of aiding and encouraging the unlawful act. He also submitted self-defense, manslaughter, and instructed the jury that if Ray Anderson acted alone upon his own violation, the appellant would not be guilty. The failure of the court to embody the law of circumstantial evidence was complained of at the trial and is brought here for review. There being no direct proof that he took part, and it being alone from inferences drawn from the existence of other facts proved that the State was to rely to show that he advised or encouraged the homicide, it was the right of appellant to have the jury know that in applying such inferences the facts supporting them must not only be proved beyond a reasonable doubt, but the circumstances must be consistent with each other, consistent with the guilt of the appellant, inconsistent with his innocence, and inconsistent with any reasonable hypothesis save his guilt, and to know that the trial judge recognized that there was no direct evidence that the appellant advised the homicide or, knowing that his son had an unlawful intent to do so, he was aided or encouraged by the words or acts of the appellant. That the mere presence of the appellant at the time and place of the homicide would not justify his conviction, is the established law of this State. Leslie v. State, 42 Texas Crim. Rep., 65. The court so instructed the jury. It is equally well established that when the actual killing is done by another the mere presence of the accused does not deprive him of the privilege of having his criminal connection with the offense determined by the rule of circumstantial evidence. In Burrell's case, 18 Texas, 713, Burrell and Burnes were prosecuted for the killing of Bird. The evidence shows that Burrell and Burns were traveling companions and were joined by Bird at the request of Burns. Both Burrell and Burns were present at the time the fatal shot was fired. Burrell fired it, and they having been tried together his case was affirmed but Burns' case was reversed because of the refusal of the court to instruct the jury on the law of circumstantial evidence. We take from the opinion the following quotation: "But it is not so clear that there is not error both in the refusal of instructions, and in the charge of the court in reference to the case of the defendant, Burns. If he be guilty, it is as a principal in the second degree, being present, aiding and abetting the commission of the homicide. To constitute the crime, of which the evidence tends to convict him, there must have been a participation on his part, in the act. If he was cognizant of the intention of his codefendant, and being present, was consenting, and it was but the carrying out of a common design, he is guilty equally with him who committed the deed; and upon this subject the general principle is correctly stated in the charge

of the court. But in order to implicate him in the crime, he must have been aware of the intention of his companion to commit it. His bare presence it not sufficient. For 'although a man be present whilst a felony is committed, if he take no part in it ,and do not act in concert with those who committed it, he will not be a principal in the second degree, merely because he did not endeavor to prevent the felony, or apprehend the felon' (Roscoe Cr. Ev., 213; Whart. Am. Cr. L., 364; Whart. L. Homicide, 157). Whether he was aware of the intention of his companion and participated in it, was the fact to be proved, in order to implicate him in the criminality of the act. That as to him, was the *factum probandum*, upon the proof of which his conviction must rest. And as to that, the evidence was wholly circumstantial. There was no positive proof that he was aware of the intention of his companion, or that he committed any overt act at the time, manifesting a criminal intention on his part. His presence was not, of itself, sufficient to inculpate him. It was not per se, evidence of guilt, or of any force as proof, only as considered with other circumstances conducing to prove his guilt. It was no the main fact to be proved; for, of itself, it did not imply any criminality. But his presence and companionship, and his conduct at and before and after the commission of the act, were circumstances from which the main fact of his participancy in the criminal intention and design of his companion was to be inferred. It is plain, therefore, that as to his guilt, the evidence was wholly circumstantial.''

The facts of appellant's case, we think, bring it within the class with the decision quoted from, which has been followed and re-affirmed on various occasions. See Early v. State, 50 Texas Crim. Rep., 344; Beason v. State, 43 Texas Crim. Rep., 442; Puryear v. State, 28 Texas Crim. App., 72; Montgomery v. State, 20 S. W. Rep., 926.

From the case of Hunt v. State, 7 Texas Crim. App., 235, we take the following quotation: ''It is no new principal in the law of this State that to justify a conviction upon circumstantial evidence alone the facts relied on must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of guilt. Barnes v. The State, 41 Texas, 342; Black v. The State, 1 Texas Ct. App., 391. If this be so, certainly a jury called to pass upon a case of that character should be informed of the rule as a part of the law applicable to the case. An ordinary charge upon the law of reasonable doubt, copied from the statute, cannot convey to their minds a clear conception of this exaction of the law, when a conviction is sought upon circumstantial testimony alone; and without some definite rule for their guidance—a rule which will serve to impress itself on their minds, and cause them to weigh most carefully all the facts, isolated or connected, from which they must reach their conclusion by rea-

sonable inference—they are not unlikely, in many instances, to found their verdict upon strong suspicion or mere probobility, which will not suffice under the law. Tollet v. The State, 44 Texas, 92.''

References to cases approving the correctness of this statement of the law will be found in Rose's Notes on Texas Reports (N. S.), vol. 5, p. 48; Branch's An. Texas P. C., sec. 1873; Vernon's Texas Crim. Stats., vol. 2, p. 744. In fact the decisions of this court are so numerous and emphatic in asserting that in a case in which reliance is upon circumstantial evidence alone, it is incumbent upon the court, in response to a timely and proper demand, to give to the jury instructions as to the rules of circumstantial evidence, that we would regard it unnecessary to encumber this opinion with anything more than a bare statement of the proposition were it not for the fact that State's counsel, referring to the case of Dennis v. State, 71 Tex. Cr., 163, contends that under the practice now prevailing, it is within the discretion of the trial judge to refuse to so instruct the jury if, in his opinion, the circumstances show the guilt of the accused. In the opinion mentioned it is stated in substance that since the Act of 1897 (article 743 C. C. P.), failure to give a charge on circumstantial evidence, upon request, may be regarded as harmless though the case be one depending upon circumstantial evidence alone, the opinion stating ''under the proof in this case no honest jury would have rendered any other verdict than that of guilty.'' A number of times since the passage of the act mentioned this court has held that when the case depended alone upon circumstantial evidence that the failure to instruct the jury on the law of that character of evidence required a reversal.

In deciding the Dennis case *supra* we think it was not the intention of the court to abandon this rule. The disposition made of the case was justified, according to the statements therein, by the fact that the defect in the charge was not in a proper and timely manner complained of in the court below. In a case decided about ten days after the Dennis case the court, while holding that a charge on circumstantial evidence was not required, says: ''We thoroughly agree with the rule of law as announced in Hunt v. State, 7 Texas Crim. App., 212, and Barr v. State, 10 Texas Crim. Rep., 507, cited by appellant, wherein it is held that where the proof of guilt depends alone on circumstantial evidence the court should submit that issue in his charge to the jury.'' The statement of the law in the case of Dennis v. State, *supra* relied upon by the prosecution, we think is to be accounted for as a reference to the rule that ''where the facts proven are in such close relation to the main fact as to make them equivalent to direct testimony a charge on circumstantial evidence is unnecessary.'' From the leading case on that subject, Holt v. State, 9 Texas Crim. App., 582, we take the following: ''The facts developed show that at the time of the killing there was no one in the house but Beard and the party who killed him. There

can be no question of this fact. They further show, from a number of witnesses, that this defendant, whom they knew and recognized then and now, just an instant or so before the killing, was seen, with a pistol in hand, to approach and enter the house; and immediately thereafter several shots were heard in the house, and defendant is again seen to emerge from the house by the door at which he entered, and to go in the direction of his horse, which he had mounted, or was attempting to mount, when he was arrested. Entering the house instantly, the witness found only the dead body of the murdered man; and there was no opportunity for any one to escape from the house save by the door through which the defendant had passed in going in and coming out, because all other sources of ingress and egress had been and were securely fastened. Under such circumstances there can, then, we conclude, be no doubt that defendant, and he alone, committed the deed.'' Other cases following this rule are Crews v. State, 34 Texas Crim. Rep., 543; Caberera v. State, 56 Texas Crim. Rep., 141; Bass v. State, 59 Texas Crim. Rep., 191; Baldwin v. State, 31 Texas Crim. App., 589; Bennett v. State, 32 Texas Crim. Rep., 217; Egbert v. State, 76 Texas Crim. Rep., 663, 176 S. W. Rep., 561.

An examination of these cases discloses that in partically all of them there was direct evidence supporting the conviction. However, the rule in a proper case holds good but this is not one that comes within its terms. Such evidence as is found in the record against the appellant is wholly circumstantial. No one testifies that he took part in or advised the homicide. The State's evidence negatives any immediate act of his. He was driving the car, but there is no direct evidence that he had any reason to expect to find the deceased at the place of the homicide. The State's evidence presents the theory of an unexpected meeting and of action by the appellant's son upon impulse arising at the time from the acts and conduct of the deceased and his companions. The court submitted theories arising upon the evidence consistent with the innocence of appellant and inconsistent with his guilt. The record is such as to require it. The presumption of innocence precludes any presumption of fact adverse to the appellant, and demands of the jury, in reaching a conclusion against him, that the facts from which they draw the inference of his guilt shall be measured by the rule which the law lays down. It is not for the court to say that with the rule of circumstantial evidence in their mind the jury may not have rendered a different verdict.

The failure of the court to embrace the law of circumstantial evidence in his charge, having been duly excepted to at the time, requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*