## HOMER JOYCE V. THE STATE.

### No. 6333.   Decided November 16, 1921.

**1.—Murder—Manslaughter—Venire—Practice on Appeal.**

Where the judgment is reversed and the cause is remanded for other reasons, the question as to irregularities in drawing the venire need not be considered.

**2.—Same—Jury and Jury Law—Practice in Trial Court.**

Where, upon trial of murder, defendant requested that the jurors as selected be retired from the courtroom, and not be permitted to hear the examination of other veniremen, his request should have been granted.  Following Crowe v. State, 89 Texas Crim. Rep., 142, and other cases.

**3.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the defendant could only have been guilty as a principal upon circumstantial evidence, it was reversible error in the court's failure to submit a charge on circumstantial evidence.  Following Early v. State, 50 Texas Crim. Rep., 344, and other cases.

**4.—Same—Defensive Theory—Charge of Court—Requested Charge.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant took no part in the dispute of his co-defendant and the deceased, and that his acts and conduct were based upon another motive, and that this constituted defendant's theory of defense, the same should have been affirmatively submitted as requested.

**5.—Same—Provoking the Difficulty—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue of provoking the difficulty, the court correctly submitted a charge thereon, and there was no reversible error on that ground.

Appeal from the District Court of Bell.   Tried below before the Honorable M. B. Blair.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*DeWitt Bowmer* and *W. W. Hair,* for appellant.—On question of circumstantial evidence:   Jones v. State, 30 S. W. Rep., 1059; Burnam v. State, 135 id., 1175; Pizara v. State, 193 id., 671.

On question of theory of defense:   Carr v. State, 190 S. W. Rep., 727; Hoyt v. State, 228 id., 936; McPeak v. State, 187 id., 754.

On question of provoking difficulty:   Burkhardt v. State, 202 S. W. Rep., 513; Dugan v. State, 216 id., 161; Carter v. State, 220 id., 335; Redwine v. State, 213 id., 636.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, Judge.—This is an appeal from a conviction for manslaughter, with a five year sentence.

The first bill of exceptions raises a question as to irregularities in drawing the venire. As this cannot arise on a subsequent trial it will not be discussed.

A request was made that the jurors as selected be retired from the courtroom, and not be permitted to hear the examination of other veniremen. This was refused. We have had occasion to commend the practice of having selected jurors retired as being in the interest of a fair trial. See Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 742; Crow v. State, 89 Texas Crim. Rep., 142, 230 S. W. Rep., 148; Gunn v. State, No. 6357, decided November 2nd, 1921, and not yet reported.

After the court submitted his charge to the attorneys in conformity to Article 735, Vernon's C. C. P., said attorneys filed objections thereto because nowhere in said charge did the court instruct on circumstantial evidence as applied to the guilt of appellant; urging in the objection that there was no proof of conspiracy between John Lewallen and appellant, and as to whether or not appellant was a principal with Lewallen was a question depending wholly upon the inferences to be drawn from circumstances in evidence, and not from any positive testimony in the case. In connection with this objection appellant requested the following special charge, which the court refused.

"In this case, if you believe beyond a resonable doubt that under the instruction heretofore given you in the charge of the court, that John Lewallen was guilty of some grade of culpable homicide, then you are instructed that as to whether Joyce was a principal with John Lewallen in such homicide, as the word principal has heretofore been defined to you in this charge, depends upon circumstantial evidence; the state in this case relying upon circumstantial evidence to show that Homer Joyce was a principal in the homicide with John Lewallen. I charge you the law of circumstantial evidence as follows:

In order to warrant a conviction of crime on circumstantial evidence, each fact necessary to the conclusion sought to be established, that is, as to whether Homer Joyce was a principal with John Lewallen or not, must be proved by competent evidence beyond a reasonable doubt. All the facts, that is, the facts necessary to such conclusion, must be consistent with each other and with the main fact sought to be proven; and the circumstances taken together must be of a conclusive nature, leading on the whole, to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused, Homer Joyce, was a principal, as that word has hereinbefore been defined in this charge to you, with John Lewallen in the offense charged. But in such cases, you are charged that it is not sufficient that the circumstances coincide with, account for and therefore render probable the guilt of the defendant; they must exclude to a normal certainty every other reasonable hypothesis except the defendant's guilt,

.and unless they do so, beyond a reasonable doubt, you will find the defendant not guilty."

In order to appraise the applicability, or otherwise, of the principle invoked it will be necessary to set out in some detail the facts.

On the day of the homicide, November 30, 1920, John Zurevec, the deceased, was running a cold drink and eating place in the city of Temple. On this date the appellant, John Lewallen and one Lanham went to Temple from their homes in the country some fourteen miles away. Lewallen at this time had a car in the garage for repair. It had been promised to him at 6 o'clock and all were intending to return home when the car was ready. About 6 o'clock appellant, Lewallen, Lanham and one Caldwell started to the garage and at the suggestion of appellant stopped at deceased's to get some sandwiches. The record in this case shows that deceased and all of the above named parties were strangers. As the parties entered deceased's place of business the word "s—n of a b—h" was used, appellant and his witnesses claiming that Lewallen used the term referring to his car, having said in substance that the "s—n of a b—h was not worth taking home after they got it." Some of the testimony indicates that this term was also used by the appellant. Deceased evidently thought, whether correctly or not, that the term had been directed at him, and said to Lewallen that he, Lewallen was not going to call anybody that in his place of business. In the meantime appellant had ordered four sandwiches. When deceased remarked to Lewallen that he was not going to call anybody that name in his place of business, according to the State's testimony, Lewallen said: "You are a s—n of a b—h," and that deceased replied, "Well if I am a s—n of a b—h, what are you, are you one too?" Appellant's testimony, on the contrary, is to the effect that Lewallen said to deceased, "I didn't call you a s—n of a b—h;" that deceased said, "You did" and ordered him, Lewallen, out of the house. According to appellant's testimony, deceased at this time had a large knife in his hand with which he had been cutting bread or meat, and that Lewallen said to him, "What has that knife got to do with me getting out," and that deceased replied, "I will show you if you don't get out." At this point Lewallen went out of the building saying, according to some of the witnesses, "I will go out and take a leak before this man waits on me," and according to others "before this man works on me." The appellant disclaims having heard him make any remark whatever. When Lewallen walked out of the build ing Caldwell followed him, this only leaving appellant and Lanham. When deceased brought the sandwiches to appellant, appellant claims that he asked him what was the matter with him and Lewallen, and deceased again said, "He called me a s—n of a b—h," and that appellant said, "No, you are mistaken, I don't think he called you that." Upon appellant again saying he did not think he. had called him a s—n of a b—h the deceased said, "That is all right whether he did or not" and that as he turned around appellant called him back and said,

"Here is the pay for the sandwiches" and gave him a five dollar bill. That deceased took the bill and registered forty cents and handed back–four one dollar bills and fifty cents in change. That appellant then said to him, "You didn't give me the right change, did you?" to which deceased replied, "Yes" and that appellant said, "I don't think you did," and that a dispute arose with reference to that, in which deceased contradicted appellant, and that appellant threw a mustard bottle at deceased, claiming that he, deceased, at the time had a knife in his hand. Appellant claims that his act in throwing the mustard bottle at deceased had no connection whatever with the dispute that John Lewallen had had with deceased, and that he, appellant, · had no knowledge at that time that Lewallen had come back in the restaurant. Appellant disclaims knowing that Lewallen was armed; says that he had been with him during most of the day, and that if he was armed he did not know it and did not think that he was; that at the time Lewallen left the restaurant he had no knowledge that he expected to return, and believed that he intended to stay away; that when he threw the mustard bottle at deceased that deceased ran down· the counter a few steps, and that then for the first time he, appellant, discovered that Lewallen had come back into the restaurant, and that when deceased saw Lewallen he said, "You get out, you called me a s—n of a b—h," and that Lewallen replied, "I did· not call you a s—n of a b—h," and that deceased again said, "You get out," and started at Lewallen with the knife, whereupon Lewallen drew his pistol and fired upon deceased, killing him. Appellant disclaims any knowledge that Lewallen intended to shoot deceased, and that at the time he threw the mustard bottle he had no idea there was going to be any shooting by anybody; that he had no purpose in his mind of assisting John Lewallen or anyone else to kill deceased; that from the time he first saw Lewallen back in the building up to the time the shooting was over that he, appellant, did nothing and said not one word; that the reason he threw the mustard bottle at deceased was because deceased disputed his word, and that it had nothing to do with deceased and Lewallen's quarrel whatever. The State's witnesses claim that the firing of the first shot by Lewallen and the throwing of the mustard bottle by appellant were practically simultaneous.

As may be seen from an examination of the evidence, there is nothing to indicate a conspiracy between appellant and Lewallen to kill deceased. They were strangers to each other. No motive is shown for the killing save the dispute which arose immediately upon the entry into the restaurant. If Lewallen became incensed at deceased ordering him out, procured a pistol and returned with the intent to kill deceased, there is no positive evidence to show that appellant had knowledge of it; that he in any way acted with Lewallen as a principal must be inferred from his companionship with him, and from his acts and conduct at the time in throwing the ˙ mustard bottle, etc. That Lewallen did the killing was unquestioned. The trial court

properly charged the jury that before they would be authorized to convict appellant of any offense they must find beyond a reasonable doubt that Lewallen unlawfully killed deceased, that appellant was present, and knew of Lewallen's unlawful intent, and so knowing, aided him by acts or encouraged him by words or gestures to kill. That he knew of such unlawful intent, or that anything appellant may have done was in aid and furtherance thereof, must be deduced from other facts in evidence. His principalship must stand or fall upon inferences from other facts in evidence. The earliest case in our reports upon the issue under consideration is Burrell v. State, 18 Texas Reports 713, decided in 1857. Burrell and Burns were tried together for killing Bird. The evidence showed that Burrell fired the shot. Burns was present, but his participation as a principal was only shown by proof of circumstances. Judge Wheeler, writing the opinion affirmed as to Burrell, but reversed as to Burns because the court failed to charge pertinently the law of circumstantial evidence as to the latter's connection with the killing. This case had been quoted from at length and approved in the case of Anderson v. State, 85 Texas Crim. Rep., 411, 213 S. W. Rep., 639, where this same question was decided in accordance with appellant's contention. See also, Early v. State, 50 Texas Crim. Rep., 344; Pizana v. State, 81 Texas Crim. Rep., 81, 193 S. W. Rep., 671. It follows from what has been said that our conclusion must be that it was error not to have given the special charge requested.

Another question closely akin to the one we have been discussing is raised by objection to the court's charge that nowhere therein is appellant's defensive theory affirmatively presented. A special charge was also requested supplying this omission. An examination of the charge leads us to believe the criticism is well taken. Appellant's testimony, supported by Lanham's was to the effect that, when Lewallen left the restaurant appellant was unaware that he intended to return, or of any intent on his part to assault deceased; that while Lewallen was gone an independent dispute over change arose between appellant and deceased that had no connection in any way with deceased's and Lewallen's trouble, and that as a result of their own dispute appellant threw a mustard glass or bottle at deceased; that if Lewallen had returned at this time appellant did not know it, and that during the time Lewallen was shooting appellant did or said nothing. This defensive theory being raised by the evidence it should in some appropriate way have been submitted to the jury.

We find ourselves unable to agree with appellant's contention that the court should not have charged upon provoking the difficulty. Under all the evidence we are led to believe this issue was fairly raised. But having limited Lewallen's right of self-defense by so charging, and thereby appellant's also, the court should have given the converse of the charge in order to apprise them what the right of accused would be under the law in the absence of an intent to so provoke a

contest. A failure to charge the converse has many times been held error. Branch's Ann. P. C. Vol. 2, Sec. 1958, and many cases collated.

Many other interesting questions are raised, but they are not likely to occur on another trial, hence are not discussed.

For the errors pointed out the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*