## Pablo Jazo v. The State.

No. 12679. Delivered November 27, 1929.
Rehearing denied March 12, 1930.
Reported in 26 S. W. (2d) 631.

The opinion states the case.

*Gordon O. McGehee* of Houston, for appellant.

*O'Brien Stevens* of Houston, Cr. Dist. Atty., and *A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, fifteen years in the penitentiary.

That deceased, a probation officer, was shot and killed at night in a house when only appellant and another Mexican, Magana by name, were present,—is not denied, but affirmed by appellant's own testimony. The house where the killing occurred was one of a number of three roomed houses fronting on a narrow alley, the entrance to which was from Dart Street and the other end of which was a railroad right-of-way fence. The houses were of the ordinary shot gun variety. Appellant and Magana had the middle room of

the north house on the row of houses fronting east of the alley. Magana had a double bed in the southeast corner of said room, appellant a single cot in the northeast corner of same. A player piano and a phonograph were on the north side of the front room, and a double bed on the south side of same. A door led from each room to its neighbor. Appellant owned a Ford coupe which was in the alley in front of the house when the killing occurred. Deceased was killed by a bullet which entered his left side, ranged in and down, coming out the right hip. It was a hard nosed steel jacketed bullet such as were used in a 45 caliber automatic pistol. Magana owned such a pistol and seems to have kept it under the pillow of his bed, a fact known to appellant. No eye-witness to the transaction testified save appellant. He and Magana were arrested in La Grange, Texas, on Friday after the killing on Sunday night. Magana then had on his person the 45 automatic, and appellant had on his person a bag containing 136 cartridges, all 45 automatics.

After arrest appellant made a written statement in the nature of a confession, a part of which was introduced upon this trial by the State, and a part by appellant. In that part introduced by the State appellant said that he and Magana, who for brevity might be referred to hereafter as M, were in the house referred to on Sunday night, October 21, 1928, and that M was sitting on a bed in the front room and appellant was sitting on a chair in the same room; that the front door was open, and the officer came in; (here is omitted a part of the confession which was later introduced by the appellant); that M ran to the middle room for his 45 automatic and returned to the front room and fired at the officer. The officer fell and he and M ran out the back door. The officer was standing at the west end of the player piano on the north side of the front room. M was standing against the double bed on the south side of said room; (here again is left out a part of the confession later introduced by appellant); that he and M gave wrong names to the officer who arrested them, because they were afraid of being arrested. We also here set out the material parts of said confession which were introduced by appellant. He said when the officer came in and went straight to M, that he pulled his pistol and shot at M. The officer said nothing to either of them. He was five or six feet from M when he shot at him. (Here comes in the statement introduced by the State, that at this juncture M ran into the middle room and got his automatic, and returned to the front room and

fired at the officer who was standing at the end of said player piano in said front room; that M was standing against the double bed on the south side of the room.) M and the officer were standing about the same distance apart as when the officer shot at M. M thought the officer was a thief coming in to steal.

The chief contention of appellant's counsel in various ways relates to the insufficiency of the testimony. It might be granted that same is not as conclusive as in some cases. We mention some of the facts seeming to have guilty relevance.

There was but one coupe in said alley that night and it belonged to appellant,—was in front of his door at the time of the killing. According to witness Wells the same coupe with three Mexicans in it had passed him at the corner of Silver and Dart Streets a few moments before the killing, and that before turning from Silver Street into Dart Street one of the occupants had fired a pistol six or seven times. A defense witness who was with Wells and heard these shots said it sounded to him like an automatic. The car turned from Dart Street into said alley. In a few moments deceased came running up to Wells and asked about the shooting, and upon being directed went into the alley referred to. About three minutes later a Mexican ran rapidly out of said alley and was followed by two others, one of whom Wells swore was this appellant and he had in his hand a pistol. Going at once into the alley Mr. Wells found deceased shot through the body, lying on his face behind appellant's coupe in front of the house occupied by appellant and other Mexicans. The pistol of deceased was in its holster on his body. A number of witnesses examined it and testified without contradiction that it had not been recently fired. The front door of the house occupied by appellant was found to be locked. Investigators testified that traces of two bullets were found inside the house. The one which appeared to have killed the deceased went through the partition wall between the middle room and the kitchen, and was evidently fired by some one from the 45 automatic of Magana, and according to the testimony of a defense witness must have been fired from the head of appellant's cot toward the rear of the house. The other indication of a shooting was a nick or scored place in the lower panel of the door between the front room and the middle room; also a lead bullet was found in the kitchen on the floor not far from the door leading thereto from the middle room. This nick or scored place was but a few inches from the floor, and the various

theories concerning same were so dependent on matters unknown and not in the record as to make speculation of no value.

Appellant's testimony as given on this trial was entirely variant from what he said in his confession. He reiterated on the trial that the front door of the front room of the house was open and that the officer opened the screen and entered without knocking or calling. He said he was sitting on the left-hand side of the officer and that M was sitting on the bed in said front room facing the front door; that when the officer entered, without a word he drew his pistol and fired at M, who got up, saying that he must be a bandit coming in to rob the house; that when the officer fired at M the latter was sitting on the corner of the bed mentioned and at once ran into the middle room, got his pistol and started *toward the kitchen door*. The officer kept following him with his gun pointed at M, who went close to where there was a wardrobe, and the officer was near the wardrobe also and close to a curtain and here he again pointed his pistol at M who fired and shot him. Appellant testified that he did not see the officer fall, but that M ran out of the kitchen door and appellant out the front door. He said he caught up with M in some weeds, and when he caught up with him M had a pistol and some cartridges in a bag which he had in his hand. Appellant affirmed he had no pistol. He said they left and stayed on the road four days. When arrested appellant had on a new white hat which he said M had bought in Houston before the shooting. He further said that when M fired at the officer he, appellant, was in the front room standing by the chair on which he was sitting when the officer first came into the room.

Again calling attention to the fact that while appellant has several bills of exception, apparently his whole contention is based on the fact that the evidence does not support the verdict. We state that unless the record is devoid of material evidence reasonably leading a dispassionate mind to the conclusion of guilt, we would not feel privileged to set aside the verdict of a jury upon this ground.

Briefly stating reasons for our conclusion herein, we have here a car of appellant on the street a few moments before the killing, one of its occupants firing a number of shots on a city street which sound as though fired by an automatic pistol. Said car turns in towards appellant's house which fronts on an alley too narrow for more than one car to pass; it is found parked in front of appellant's house immediately after the killing. We further have deceased, an officer, coming down to appellant's house to investigate a violation

of the law; two shots are heard and the officer's body is found out in front of the house whose door is locked, lying on his face on the ground behind appellant's car. He says to persons who reached him that he has been shot by some Mexicans. His pistol is in its scabbard, a place where reason would seem to reject its being if in the hand of its owner when he was fatally shot through the body from side to side in the house. We have two Mexicans fleeing at once from the scene of the shooting, passing a witness who says appellant was one of them and that he had in his hand a pistol. He flees the town, leaves his car and other belongings, notwithstanding the fact that he now says he did nothing at all himself, and that his friend Magana only shot once at a supposed robber and hijacker who had already fired at him. He and M remain together five days and change their names when arrested. They still have the automatic, and appellant is the carrier of 136 steel jacketed automatic cartridges.

The story told by appellant both as a witness and in his confession was for the jury to weigh,—for him if same bore evidence of truth; against him if same appeared to be false. Its first utterance staggers credulity. It is that a probation officer of experience walked without calling or knocking into a private residence and without a word drew his pistol and fired at a stranger who was sitting quietly on a bed. His next statement in his confession is equally as extravagant. He says when the officer fired at Magana at a distance of five or six feet and missed him, the latter went into the next room, got a pistol from under a pillow, came back in the front room, walked to within five or six feet of the officer and shot him through the body, without any further effort being manifested by the officer to defend himself or follow up his first attack. He testified as a witness on this trial that after the officer fired without a word at the unoffending Magana as he sat on the bed in the front room, the latter went into the middle room, got his pistol from under the pillow, and that he was followed by the officer who passed Magana and went to a position near the curtain in the northwest corner of the middle room where he again pointed his pistol at Magana, who thereupon shot him through the body. He says that both he and Magana then ran, one out of the back door and the other out the front door, though they thought Magana had only shot at an intruder, a thief, etc., but when they meet in the weeds outside, Magana had not only the automatic pistol but a bag with 136, 45 automatic cartridges in it.

In our opinion the jury were entitled to take into consideration these facts together with other evidence of guilt, and we are unable to bring ourselves to believe that they were not justified in their verdict.

We find nothing in the argument of State's counsel, nor in the other matters complained of in appellant's bills of exception which appear to present error.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his contention that the evidence is insufficient to support the conviction. In our original opinion the evidence was rather fully reviewed and the reasons given for believing it sufficient. Our views remain unchanged and necessity for writing further on the subject is not apparent.

The evidence shows that the fatal shot was fired by one Magana, appellant being present at the time. It is contended that the state relied wholly on circumstantial evidence to show appellant's guilty participation in the killing and that a charge on circumstantial evidence was demanded. This might have presented a rather serious question if raised at the proper time. Burrell v. State, 16 Texas 713; Anderson v. State, 85 Tex. Cr. R. 411, 213 S. W. 639; Early v. State, 50 Tex. Cr. R. 344, 97 S. W. 82; Pizana v. State, 81 Tex. Cr. R. 81, 193 S. W. 671; Joyce v. State, 90 Tex. Cr. R. 265, 234 S. W. 895; Davis v. State, 107 Tex. Cr. R. 315, 296 S. W. 895.

However, no objection to the charge for omission to instruct on the subject was presented; neither was any special charge requested which would call the court's attention to the matter. Under such circumstances the court can not in obedience to Articles 658 and 666 C. C. P. entertain a complaint that the court did not instruct on the law of circumstantial evidence. Charles v. State, 85 Tex. Cr. R. 534, 213 S. W. 266; Cobb v. State, 105 Tex. Cr. R. 81, 286 S. W. 1086; Givens v. State, 98 Tex. Cr. R. 651, 267 S. W. 725.

The motion for rehearing is overruled.

*Overruled.*

### ON SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant requests leave to file second motion for rehearing in which he complains rather bitterly because

we did not discuss at length his several bills of exception. They were considered as shown by the last paragraph in our original opinion and were thought then to present no error. We remain of the same opinion after again examining them. If this court should undertake to set out and discuss in detail each bill of exception in every case brought before us, it would be an endless undertaking resulting at last in no general good to the bench and bar of the state.

The request for leave to file second motion for rehearing is denied.

*Overruled.*