PAT HENDERSON v. THE STATE.

No. 14639. Delivered March 30, 1932.

The opinion states the case.

*Adams & McAlister,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for three years.

It was charged in the indictment, in substance, that appellant did, with malice aforethought, kill James White by shooting him with a pistol.

It appears from the record that Mose White, a relative of deceased, had lost a dog, which he had accused Buster Whitley of killing. On the day of the homicide deceased and his son, Oleen White, had gone to the gin with a load of seed cotton. Appellant, Buster Whitley, and Buell McNeese came to the gin while deceased was waiting to have his cotton ginned. Appellant was not related to either Whitley or McNeese. Deceased's son testified for the state, in substance, as follows: He and his father, the deceased, were sitting on a bale of cotton when he saw appellant and his companions coming toward them. Upon approaching them, appellant asked him where he lived. When he answered the question, appellant struck him, knocking his hat off. Deceased said: "Let's get away from here." The witness began running, and appellant followed him, with a brick in his hand. He ran some distance away from the gin, pursued by appellant. While he and appellant were away from the gin, he (the witness) heard some shots. When he returned he found that his father had been shot. He did not see appellant do anything to deceased.

It was uncontroverted that Buster McNeese fired the fatal shots, and that appellant was not immediately present at the time. Witnesses for the state testified that as deceased ran away from McNeese and Whitley, McNeese fired three or four shots at him; that deceased then ran into the gin office; that after appellant returned to the scene of the homicide he and Buster Whitley went into the gin office; that Whitley attacked deceased with his fists; that Whitley reached his hand in deceased's pocket and got out his knife, saying: "I am going to cut his head off"; that one of the witnesses interfered, and the parties left; that when Whitley and appellant approached the gin office, where deceased had run after being shot, each had a brickbat in his hand. At this point we quote from the testimony of one of the state's witnesses as follows: "Pat Henderson (appellant) was not right there when the shots were fired; he had done started up towards the road there after the negro boy. The best I remember the negro boy was bareheaded and Pat Henderson was after him. I did not see Pat Henderson do anything there on that ground except chase that negro with a brick; he was not there when the shots were fired."

Touching the occurrence in the gin office after deceased had been shot, a witness for the state testified: "I did not see Mr. Henderson (appellant) hit him (deceased). * * * And he ran out the door and they were

dragging the negro (deceased) out—that is Mr. Whitley was; Mr. Henderson did not have hold of him. * * * Mr. Whitley was over him down between those scales in a narrow space about that size; and he got down over him and got his knife out, and went in his pocket; I did not see him with the knife when he pulled it out or see him open the knife. I did not see the knife in his hand—possibly it was shut up, I don't know; and he said: 'I will cut his head off"; and I said 'Don't do that, you have killed that negro already'; and I did not see Mr. Henderson (appellant) do anything; it is my recollection that he was standing there at that time; but I did not see him hit anybody, only he came out of the office with a drawn brick."

State's witness McDuffie testified, in substance, that after deceased ran into the gin office he saw appellant and Buster Whitley with deceased shoved up against the door, apparently trying to strike him. He said he did not know whether they hit him or not. He said that he later saw Buster Whitley strike deceased in the face.

Appellant testified, in substance, that he went to the gin office with McNeese and Whitley on the occasion in question without any knowledge that there would be trouble between the parties and deceased; that he did not know McNeese was armed with a pistol; that he had not agreed with Whitley and McNeese to attack deceased and his son; that he had had no trouble with deceased or his relatives concerning a dog; that he ran deceased's son away after the son and Whitley began fighting, as a result of some words about a 'possum dog; that when he returned to the scene he found that deceased had been shot; that he was not present at the time the shots were fired, and had no idea that McNeese was going to kill deceased; that he did not strike deceased while he was in the gin office, but on the contrary tried to get Whitley to desist when he saw that he was attacking deceased.

Appellant timely and properly objected to the charge of the court on the ground that nowhere therein did the court instruct the jury on the law of circumstantial evidence as applied to the guilt of appellant. Appellant urged in the objection that there was no proof of a conspiracy between him and Buster McNeese, and that as to whether or not he was a principal with McNeese was a question depending wholly upon inferences to be drawn from the circumstances in evidence, and not from any positive testimony in the case. The opinion is expressed that the objection was well taken. It is seen from an examination of the evidence that there was no direct evidence indicating a conspiracy between appellant and McNeese to kill deceased. Appellant was not related to McNeese or Whitley. That McNeese did the killing was shown by the state, and that appellant was not immediately present when the fatal shots were fired, and participated in no quarrel that McNeese had with deceased was also shown by the testimony of the state. The only circumstance in the record

showing any ill-will· on the part of appellant toward deceased was disclosed by the testimony of a state's witness to the effect that after deceased had been shot and while he was in the gin office, appellant aided Whitley in shoving him up against the wall, and that appellant appeared to be trying to strike deceased with his fists. The court properly charged the jury that before they would be authorized to convict appellant they must find beyond a reasonable doubt that McNeese unlawfully killed deceased, that appellant was present, and knew of McNeese's unlawful intent, and, so knowing, aided him by acts or encouraged him by words or gestures to kill. That appellant knew of such unlawful intent, or that anything appellant may have done was in aid or furtherance thereof, must be deduced from other facts in evidence. Appellant's principalship depended entirely upon inferences to be drawn from other facts in evidence. It is well established that, when the actual killing is done by another, the mere presence of the accused does not deprive him of the privilege of having his criminal connection with the offense determined by the rule of circumstantial evidence. Duke v. State, 117 Texas Crim. Rep., 381, 36 S. W. (2d) 732; Burrell v. State, 18 Texas App., 713; Early v. State, 50 Texas Crim. Rep., 344, 97 S. W., 82; Joyce v. State, 90 Texas Crim. Rep., 265, 234 S. W., 895; Tipton v. State, 95 Texas Crim. Rep., 205, 253 S. W., 301.

Appellant excepted to that part of the charge of the court in which his affirmative defense was submitted, pointing out in the exception the particulars in which it was contended that the charge was too restrictive. Pretermitting a discussion of the question, the opinion is expressed that the charge should have, in response to the exception, been amended. See Cammack v. State, 102 Texas Crim. Rep., 579, 278 S. W., 1105.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.