CHARLIE COLEMAN v. THE STATE.

No. 6364.    Decided November 23, 1921.

**1.—Theft of Hogs—Evidence—Bolstering up Witness.**

Where, upon trial of theft of hogs, the State's witness had testified that he had seen defendant and another driving a bunch of hogs, and, over objection of defendant, he was then asked by the State if he told anybody about seeing them, and replied that he had told a certain person, this evidence was improper to bolster up the State's witness. Following Doucette v. State, 45 S. W. Rep., 800.

**2.—Same—Evidence—Rule Stated—Supporting Testimony—Fabrication of Testimony.**

The rule that a party may support a witness by proof of statements, consistent with his statement where the adverse party has proven against him statements to the contrary does not control this character of attack, but the other rule applies that when the witness is probably biased in favor of the party calling him, because of his relation to him, etc., it may be shown that before such relation existed the witness made statements confirmatory to his testimony now given in open court. Following Riojas v. State, 36 Texas Crim. Rep., 182; but in the instant case, under the peculiar facts disclosed by the record, such confirmatory statements should not have been admitted.

**3.—Same—Credibility of Witness—Other Transactions—Cross-Examination.**

Upon trial for theft of hogs, where the parties found in possession of the hogs had given favorable testimony for defendant, there was no error on cross-examination by the State to show by them that they had paid the owners of the hogs a large amount of money by checks to avoid prosecution; however, testimony that the wife of one of these witnesses had signed another check at another time was inadmissible, there being no evidence that she was authorized to do so, or that said witness had any connection therewith.

**4.—Same—Remarks by Court—Practice in Trial Court.**

Where, upon cross-examination of a witness, the State propounded the question, "When did you first tell the officers that Glover was the man that brought the hogs over there, etc.," to which defendant objected, and in overruling the objection the trial court said to counsel, "Don't you think it goes to the credibility of the witness?" "The court thinks it is very material." *Held*, that the court should not have made this remark under Article 787, Vernon's C. C. P.

5.—Same—Charge of Court—Circumstantial Evidence—Words and Phrases.

Where, upon trial of theft of hogs, the court charged the jury, "you are instructed that the State relies *in part* for a conviction herein upon what is known as circumstantial evidence," and then followed with the usual charge upon that subject; *held,* that the court should have omitted the words 'in part' from his charge.

Appeal from the District Court of Freestone. Tried below before the Honorable A. M. Blackmon.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Boyd, Bell & Smith,* and *Williford & Geppert,* for appellant.—On question of bolstering up testimony: Gribble v. State, 210 S. W. Rep., 215; Scott v. State, 160 id., 960; Rogers v. State, 225 id., 57.

On question of contradicting witness: Campbell v. State, 224 S. W. Rep., 899; Sine v. State, 215 id., 967, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Cited cases in opinion.

HAWKINS, Judge.—Appellant was charged with the theft of hogs from one J. C. Hagler. Conviction followed, punishment being assessed at two years in the penitentiary.

J. C. Hagler and G. B. Anderson owned quite a bunch of hogs, which were running together in the same locality. On a certain Thursday they discovered that twenty-seven of the hogs were missing. Part of those gone belonged to Hagler, and part to Anderson. It was the theory of the State that Charlie Coleman (the appellant) and Press Yarbrough had stolen the hogs on Wednesday and carried them, or part of them at least, to Linfield Powell's. Press Yarbrough and appellant were negroes. Yarbrough was living upon Powell's place and cultivating land for him. Appellant was cultivating land for Tolbat Young, Jr. Young and Powell were brothers-in-law. In support of the State's theory, Essex Glover, another negro, testified that on the Wednesday in question he had seen Coleman and Yarbrough driving a bunch of hogs in the direction of Powell's house.

A part of the missing hogs were found in Powell's barn on Saturday night. On the trial, Powell claimed to have bought them from Yarbrough. Appellant's premises were searched. Fresh meat was found, on one shoulder of which a brand corresponding to Hagler's brand was discovered. It was the theory of the defense that Essex Glover had stolen the hogs, and sold part of them to appellant and Yarbrough, having delivered them on Friday evening at Powell's barn. On direct examination, after Glover had testified that he had seen appellant and Yarbrough driving a bunch of hogs, over objection of appellant, he was asked if he had told anybody about seeing them, ·

and replied that he had told Floyd Bryant about it on Wednesday night. This was error. The witness had not been attacked in any way at that time, and it was improper to so permit the State to bolster its witness. Doucette v. State, 45 S. W. Rep., 800.

On cross-examination, however, persistent efforts were made to get admissions from the witness that he had offered to sell hogs to Yarbrough prior to this time; that he had delivered the hogs to Yarbrough and appellant at Powell's barn on Friday night, and received a check in payment, and that he had lost the check in a gambling transaction. Appellant's witnesses affirmed the truth of all these matters. It was made to appear from appellant's attack on the witness Glover that the latter was the thief, and that his testimony was untrue and fabricated for the purpose of shielding himself. In rebuttal the State recalled Glover and, over objection, was permitted to prove by him that on Wednesday night he told other parties (naming them) about having seen appellant and Yarbrough driving the hogs that day, and by the parties named that such statements were made to them by Glover. Objections urged were, that appellant had not undertaken to prove contradictory statements of the witness, and had made no attack upon his testimony in such way as would permit the State to thus support him. The rule that a party may support a witness by proof of statements consistent with his testimony where the adverse party has proven against him statements to the contrary does not control in this character of attack. The rule here invoked is stated by Underhill on Evidence, Section 241, to be: " . . . When, however, it appears that the witness is probably biased in favor of the party calling him because of his relation to him, or on account of his relation to the crime which is under investigation, it may be shown that before such relation existed, the witness made statements confirmatory of his testimony now given in open court." This court, speaking through Judge Henderson in Riojas v. State, 36 Texas Crim. Rep., 182, 36 S. W. Rep., 268, says, the rule is, "When the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So, in contradiction of evidence tending to show that the account of the transaction given by the witness, is a fabrication of late date, it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen." The correctness of the rule was reaffirmed in Edwards v. State, 61 Texas Crim. Rep., 307. To the same effect is the principle stated in Vol. 1, Wharton's Criminal Evidence, Section 492. The trouble is not with the rule under which the testimony was admitted, but the difficulty is to determine its application to the facts of this particular case. To render admissible the confirmatory or supporting statement it must have been made at a time prior to the existence of the corrupt motive at-

tributed to the witness while testifying. The defense witnesses do not undertake to prove as against Glover when he committed the theft of the hogs; but charge that on Sunday preceding the theft he had offered to sell them hogs, when he owned none, and on a Wednesday following (the day it is claimed appellant and Yarbrough stole them) that he promised to, and did, deliver them on Friday. If, on Wednesday night when Glover made the statements introduced to support him, he had already stolen the hogs, or had then formed the design to steal them, the same motive would have existed as was attributed to him at the trial. We have concluded that under the peculiar facts disclosed by the record, such confirmatory statements should not have been admitted. Powell and Young were used as witnesses by appellant. They gave testimony favorable to him. On cross-examination, over repeated objection of appellant, counsel for the State was permitted to elicit from them that when Hagler and Anderson claimed the hogs in question said witnesses had agreed to pay one hundred and fifty dollars each in order to settle the matter and avoid a prosecution; that each gave their check for that amount. Objections to this testimony were urged on the ground that appellant was not present at the time the conversation with reference to the settlement and giving of the check was had, was not a party to it; that it was done without his knowledge or consent; was not ratified by him, therefore, was prejudicial to his case, and inadmissible against him for any purpose. The testimony was admitted as affecting the credibility of the testimony of Powell and Young, and was so limited by the court in his charge. While it is well understood that a party can not be impeached upon a collateral or immaterial matter, still we do not believe the evidence complained of comes within that rule. "The feelings, bias and relationship of the witness are never collateral, and the witness himself may be interrogated as to matters showing the same, and if he denies it, then the contrary fact may be shown by others." Nader v. State, 86 Tex. Crim. Rep., 424; 219 S. W. Rep. 474. "The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. A party may prove declarations of witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility." Branch's Criminal Law, Sec. 861, and authorities there cited. In the Nader case, *supra,* one Alex George had been used as a witness by the defendant. On cross-examination he was asked if about a month after the killing which was under investigation, he and other parties, naming them, did not offer to pay the widow of deceased a large sum of money if she would drop the prosecution. It was held that it was permissible for the State to ask the witness George with reference to his connection with such a transaction, and if he denied it, to prove it against him, but that it was error for the State to have included in its proof the actions of other parties who were related to appellant, but were

not ·witnesses. Powell and Young having been offered as witnesses by appellant, and having given testimony favorable to his defense, under authority of the Nader case, *supra,* and authorities therein cited, we hold the testimony to have been admissible, limited in its purpose, as it was, by the instruction of the court. However, during the investigation of this matter, it appears that on the Saturday night when Hagler and Anderson first reached Powell's place the latter was sick in bed; some talk and negotiations occurred between Mrs. Powell and Hagler with reference to the matter, and Mrs. Powell gave a check to Hagler at that time for three hundred and ninety-five dollars, signing her husband's name thereto. Mrs. Powell ·was not a witness. It is not shown by the testimony that Powell was a party to this transaction, or knew anything about it, or had authorized his wife to sign the check. On the next morning he demanded the return of the check. Neither Powell's interest or bias or his credibility as a witness could have been affected by any action on the part of his wife not authorized by him, and the evidence as to the three hundred and ninety-five dollar check was improperly admitted. It·was the act of a third party who was not a witness in the case, and therefore, whose action with reference to an offer to compromise or settle, could not be shown.

Upon cross-examination of Linfield Powell the State propounded the question: "When did you first tell the officers that Essex Glover was the man that brought the hogs over there on Friday night?" Appellant objected on various grounds. In the light of the facts it was evidently the purpose of the State to discredit the witness by showing that he never did report to the officers that Glover brought the hogs to his (Powell's) place, but did on the contrary report that it was appellant and Yarbrough. In overruling the objection the trial judge said, "Don't you think it goes to the credibility of the witness? The court thinks it is very material." Exceptions were reserved to the remark of the court. When counsel challenges the ruling of the trial judge in such positive manner as to almost reflect upon his intelligence, we can readily understand the great provocation to bring forth a remark such as is here complained of. But the trial judges are all conversant with Article 787, Vernon's C. C. P. and should be sufficiently self-possessed not to permit themselves to be led into such an error. If a discussion, or interchange of ideas, between counsel and the judge is thought to be necessary to reach a fair understanding of the legal proposition controlling a particular matter, before it is engaged in, the jury should be withdrawn.

The court charged the jury: "You are instructed that the State relies *in part* for a conviction herein upon what is known as circumstantial evidence," and follows with the usual charge upon that subject. Special exception was directed to the portion of the charge quoted, on the ground that there was no evidence in the case except circumstantial evidence which connected, or tended to connect, appellant with the

taking of the hogs. The court declined to amend his charge explaining that the "witness Essex Glover testified to having seen appellant and another driving the hogs of J. C. Hagler from the direction of the place where they were taken, toward the place where they were later found." If the State only relied in "part" upon circumstantial evidence there was no necessity to charge upon it at all. The matter alluded to by the court as warranting the charge as written was itself only a circumstance going to prove guilt. The "taking," the gist of the offense, had been completed, and asportation of the property was under way. There was no positive evidence of the theft. We think the court should have omitted the words "in part" from his charge.

Many other alleged errors are presented, but on account of this already too extended opinion, and the fact that they are not likely to arise upon another trial, discussion of them is pretermitted.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*