**Finis Smith BLANKENSHIP, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 44646.

Court of Criminal Appeals of Texas.

April 5, 1972.

Rehearing Denied June 28, 1972.

Melvyn Carson Bruder, W. James "Jim" Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

Dally, Commissioner. The conviction is for robbery by assault; the punishment, two hundred years imprisonment.[1]

Among the grounds of error urged by appellant is "The trial court erred in failing to respond to appellant's request to charge the jury on the law of circumstantial evidence." We agree that the failure to submit to the jury a charge on the law of circumstantial evidence, which was timely and properly requested, was reversible error.

In McCormick v. State, 168 Tex.Cr.R. 489, 329 S.W.2d 436 (1959) and Burleson

1. For a separate offense appellant was convicted as an accomplice to robbery by firearms. That conviction and the sentence of fifty years imprisonment were affirmed. See Blankenship v. State, 448 S.W.2d 476 (Tex.Cr.App. 1969).

v. State, 132 Tex.Cr.R. 2, 101 S.W.2d 1020 (1936), the judgments were reversed for the failure to submit a charge on the law of circumstantial evidence. The submitting of such a charge is more necessary under the facts in the case before us than it was in either *McCormick* or *Burleson*.

In McCormick v. State, *supra,* the State contended as they do in this case, that the defendant was a principal in a robbery offense.

"The robbery occurred at approximately 7:30 p. m. at the Kellam farm . . . One Barnes and one Tunnell approached the Kellam home on foot from a direction opposite the highway which ran in front of the house, entered the same, took money and checks from Kellam at gunpoint, and left in Kellam's automobile.

"[A]t the time the robbers entered Kellam's home he was talking over the telephone to his friend Pippin, the postmaster at Van some six miles away. The alert Mr. Pippin detected that all was not well at the Kellam home and set out to investigate. As he approached the Kellam home he saw his friend's automobile back out of the driveway and drive off in the direction of Canton. He brought his automobile to a halt and backed up even with Kellam's home and saw that all the lights were out. At this moment another automobile passed at a high rate of speed also going in the direction of Canton, and Pippin followed. After he caught up with the automobile which had passed he noted the license number and saw Kellam's automobile approximately a city block ahead of it. At an intersection in the road the automobile which he identified as a Pontiac came to a halt, Pippin passed near it, and identified appellant as the driver. The Kellam automobile proceeded on toward Canton and Pippin turned off on another road, went to a nearby house and called the police, after which he returned to the Kellam home.

"A short while later that night officers apprehended the Pontiac approximately 20 miles south of Canton. Appellant was the driver, and Barnes and Tunnell were his passengers. In the automobile and on the persons of Barnes and Tunnell were found the fruits of the robbery and the pistols and masks which had been used. Nothing was found on appellant's person. Several hundred dollars in money and a check payable to Kellam were found 'stuck down in between the seat and the back' 'right at the right of where you would sit' at the steering wheel.

"Kellam's automobile was found at a roadside park five miles east of Canton in the direction of Kellam's house." 329 S.W.2d at 437.

This court, stating that "The main fact to be proved was that appellant participated in the commission of the robbery," concluded "the proof of such main fact in the case at bar rests entirely upon circumstantial evidence and the court erred in failing to give the charge requested."

While we choose not to burden this opinion with a recital of the facts in Burleson v. State, *supra,* we do note that the facts in the case at bar are certainly no less compelling in requiring the submission of the requested charge than in that case.

We turn now to the facts in the case before us.

Witness McKinney, manager of Minyard's Supermarket on Storey Road in Irving, Texas, testified that at about 8:45 a. m. on the morning of February 12, 1968, two men (neither of whom was appellant) wearing ski masks and brandishing .45 automatics, entered the store and yelled "This is a stickup." Both men walked toward the office. One of the men stopped "halfway"; the other entered the office, handed McKinney a pillowcase, then hit him on the shoulder and told him to fill the pillowcase up with the money. While one of the men held a pistol "about an inch" from his

head, McKinney placed the money in the pillowcase. The robber backed out of the office and said "Nobody follow me." Both men then left the store and got into a white, 1966 four-door Pontiac with license number RJG–36.

At approximately 8:45 a. m., Clifton Heatherly, manager of another Minyard's food store in Irving, approached the store where the robbery was committed. As he drove up, he saw the two men wearing masks and carrying "something white," coming out of the front door of the store. He observed that one of them had a gun in his hand. When the two men left in a white Pontiac, Heatherly followed them. He stayed within 100 to 200 yards of the Pontiac for a distance of about "10 blocks," at which point a white 1966 Chevrolet convertible turned onto the street behind the Pontiac, "more or less in convoy."

The two vehicles proceeded "four or five blocks" farther and then turned into a cul-de-sac, or dead-end turnaround. The two automobiles made a U-turn and stopped behind a parked blue automobile. Heatherly proceeded to the next intersection, turned around, then parked facing the street off which the cul-de-sac branched. "In a very few seconds" the white Chevrolet convertible passed Heatherly. Inside he could see one person. Heatherly again followed it until it stopped at Storybook Land, the grounds where a park for young children had formerly been operated.

Witnesses Yeary and Dodson, two plumbers who were working in a house near the cul-de-sac, testified that they saw the two automobiles enter the turnaround and stop. They said they observed two men get out of the Pontiac, enter the white Chevrolet, then duck down. When the Chevrolet left the cul-de-sac, only the driver could be seen. Yeary could not identify the driver as the appellant. Dodson was asked at the time of trial if "anyone in the courtroom *looks like* the person that was driving that car . . . ?" He pointed to the appellant but stated that he was not positive.

As Heatherly passed the entrance to Storybook Land, he noticed the driver of the white convertible, a short male wearing a dark, brimmed hat and a beige jacket, get out of the car and start to approach the gate to the property.[2] When Heatherly turned around and drove by the gate again, the car was no longer at the entrance. He went to a Texaco Service Station and called the Irving police. Within minutes, two patrol cars arrived at the service station; one officer proceeded to Storybook Land, where he established surveillance at the entrance, while the other returned with Heatherly to the cul-de-sac, where they found a Pontiac with the license number RJG–36.

Approximately forty to forty-five minutes after Officer Holden had parked near the entrance to Storybook Land, two vehicles pulled up to the innermost gate of two gates to the premises. A "black vinyl-over-white Mustang" approached the gate, followed by a white 1966 Chevrolet convertible. When they reached the gate, it was opened by the driver of the convertible. Officer Holden recognized the individual as Finis Blankenship, the appellant. Both cars proceeded through both gates and then stopped. The Mustang then pulled forward a little bit and then hesitated and then went on [Highway] 183 towards Irving." Appellant backed the other vehicle through both gates and went "back into Storybook Land."

Officer Holden stopped the Mustang a short distance past the Texaco Service Station. Immediately upon being stopped, the driver of the Mustang, Robert Sharrock, got out of his automobile and approached the police vehicle. Holden asked

2. Heatherly testified that he drove within "fifteen or twenty yards" of the man who had left the car to open the gate. While he did not recognize the man to be the appellant he was "not willing to say that it could not have been" appellant.

Sharrock for his identification, spoke to him between the two vehicles for a few moments, then proceeded to look into the Mustang. On the floor of Sharrock's automobile, on the driver's side, in "ones, fives, tens and a few twenties," Holden found $674.00.[3]

As Officer Holden left the entrance to Storybook Land pursuing the Mustang, he was passed by Officer Proffer and James R. Caldwell, Chief of Police, Irving Police Department, in another police vehicle. Chief Caldwell and Officer Proffer pulled in and parked near the entrance to Storybook Land. After being there a short while, a dark colored Oldsmobile started to leave the park. The two officers attempted to stop the car. Proffer got out of the police vehicle and walked to the driver's side of the Oldsmobile; he was carrying a shotgun. When Proffer ordered the driver of the Oldsmobile to stop, "he took off westbound against traffic," spraying gravel all over Officer Proffer and Chief Caldwell. Chief Caldwell, who had gotten out of the police car, shot out the back window of the Oldsmobile, but was unable to stop the vehicle. Neither the Oldsmobile nor the driver were ever apprehended and it was not determined if anyone else left the premises with him.

A short time later, after the extra officers, police reserves, and helicopter that Chief Caldwell had requested were in position, Caldwell and several other officers entered the premises and drove up to the house on the grounds. After being called, appellant voluntarily came out of the house. The officers presented appellant with a search warrant and proceeded to search the premises. Recovered in the search were the following: a tan jacket with a sheepskin lining; a .45 caliber automatic pistol from which the clip and part of the handles were missing; a drawer containing 297 one-dollar bills; a pair of men's grey khaki pants in which were found $460.00; a woman's purse containing $117.00; two white pillowcases that were being washed in a washing machine; and a man's dark colored "regular hat with a brim." The white 1966 Chevrolet convertible was parked in the garage.

To summarize, the State's evidence reveals that two individuals, neither of whom was the appellant, robbed Minyard's Supermarket, walked out of the store, got into a Pontiac automobile, then left. After having driven for a distance of approximately "three-quarters of a mile," a white 1966 Chevrolet convertible turned onto the street behind them and followed them for a short distance. Thereafter, both vehicles entered a cul-de-sac, made a U-turn, and stopped. The two men who had robbed the store then got into the white Chevrolet, ducked down, and left with the driver, who one witness thought looked like appellant.[4] The white Chevrolet convertible then proceeded to Storybook Land.

The cases relied upon by the State such as Seals v. State, 126 Tex.Cr.R. 609, 73 S. W.2d 528 (1934) are not in point. In that case there was testimony of an accomplice witness which constituted direct evidence of the appellant's participation as a principal in the offense for which he was convicted. In the case before us there was neither accomplice testimony nor a confession or any other direct evidence of the appellant's participation in the commission of the offense as a principal. The failure to charge on circumstantial evidence was error.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

---

3. Sharrock was convicted for this robbery prior to appellant's trial and sentenced to ten years imprisonment.

4. The identifications were more positive in both McCormick v. State, *supra*, and Burleson v. State, *supra*.