Henry ADAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 51268.

Court of Criminal Appeals of Texas.

June 16, 1976.

Steven F. Gamble, Longview, for appellant.

Odis R. Hill, Dist. Atty., and Nathan Holt, Asst. Dist. Atty., Longview, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of aggravated robbery; punishment was assessed by the jury at imprisonment for 18 years.

This cause was dismissed in a per curiam opinion dated January 14, 1976, for the reason that the sentence had been improperly imposed without a waiver by the appellant prior to the expiration of the time allowed by law in which to file a motion for new trial or in arrest of judgment, leaving this Court, therefore, without jurisdiction to hear the appeal. By a first and second supplemental transcript it is shown that sentence was reimposed on January 30, 1976, and thereafter the appellant gave notice of appeal in a timely fashion on February 6, 1976. The appeal is reinstated.

Appellant challenges the sufficiency of the evidence and contends that the court erred in admitting evidence recovered as the result of an alleged unlawful search and seizure.

The record reflects that on December 4, 1974, Gerald Steed, the complaining witness, was operating a Citgo service station in Longview. At 9:10 p. m. he was in the station's small, well-lit office when three males appeared. One of the men said, "This is a robbery"; Steed glanced over at them to see what their "authority" was; it was a small caliber pistol held against the leg of one of the men. Steed was told to "look down and turn around." He was able to get a good look at two of the men before he was told to look down; he only saw the profile of the third man as that man moved past him to the back door. Standing by the back door, the third man told him, "Don't look up, you M. F., or I'll shoot you."

After the assailants emptied the cash register of approximately $52, they ordered Steed, eyes still on the ground, out the back door and demanded his wallet. Steed started to hand his wallet to the men, then broke and ran. One shot was fired at him, but it missed and he kept running, then doubled back to another service station, called the police and reported the robbery along with general descriptions of the three men involved.

Mrs. May Joseph Anthony testified that at 9:30 p. m. on the evening the robbery occurred she had just returned from visiting her husband in the hospital when three men knocked at the door of her house, which was located a few blocks from the Citgo station; her son, Arthur Wade, asked who it was, then asked them to come in. The three men were identified as Paul Writt, Frederick Writt and the appellant. One of the three called a cab and then all three went into an adjoining bedroom to listen to music until the cab arrived. When the cab did arrive, one of the men went out and told the driver the party who had called the cab had left. A few minutes later Mrs. Anthony went outside to tell the driver that the men who had called the cab were still in her house. Upon exiting the house Mrs. Anthony discovered that the cab was no longer there, but that instead two policemen were standing in her yard.

Officers Jim Hays and Ken Canady were patrolling when they received the report of the robbery over their patrol car radio; they cruised in the area north of the Citgo station until they saw a cab. They stopped the cab and as a result of a conversation with the driver proceeded to an address which was that of Mrs. Anthony's home. Shortly after they arrived at the house Mrs. Anthony came outside.

One of the officers asked her if anyone in her house had called a cab. She replied, "Yes, sir, three of them in here." The officers then asked if they could go inside and look around; Mrs. Anthony told them to go ahead, that she "didn't have anything to hide." The officers looked in the small bedroom off the living room and there discovered the appellant sitting on a couch and the Writt brothers sitting on the bed. The three men fit the general description which had been broadcast over their radio; they were handcuffed and taken into custody in the living room of the house. One of the men claimed he lived at the house and another claimed kinship to the Anthonys, but these statements were denied by Mrs. Anthony. The officers then asked Mrs. Anthony if they could look around in that bedroom and she said they could. Under the edge of the bed where the Writt brothers had been seated Officer Hays found two leather jackets, one brown and one blue,

and a black stocking cap. Under the mattress where Paul Writt was seated Officer Hays found a .22 caliber pistol containing five live rounds of ammunition and one spent shell; the pistol smelled strongly of having been fired a short time before. Mrs. Anthony told the officers that the items did not belong to anyone in her household.

When the three men were taken back to the Citgo station, Steed immediately recognized the jackets and the Writt brothers. It is unclear from the record whether he was able to identify the appellant at that time; however, at the trial he could not make a positive identification of the appellant, venturing only that he fit the general height and weight description he had given of the third man in the robbery whose face he had been unable to see before he was told to look at the ground.

At the police station officers searched the appellant and the Writt brothers. The appellant was found to have in his possession two live rounds of .22 caliber ammunition and $17; Frederick Writt and Paul Writt had $18 and $17, respectively, in their possession.

Officers Hays and Canady returned to Mrs. Anthony's house where she gave them a green sweater and a gold stocking cap that she said also did not belong to her.

■ The appellant contends that the items seized in the search of the bedroom in Mrs. Anthony's were the fruits of an illegal search and seizure. We disagree and overrule this contention.

The State introduced eight exhibits during the trial; five of those exhibits were seized by the officers at Mrs. Anthony's home. Those exhibits were the .22 caliber pistol ( # 1); five live rounds and one spent shell from the pistol ( # 2); a brown jacket ( # 3); a blue jacket ( # 4); and a black stocking cap ( # 5). The appellant withdrew his objection to the brown jacket and the black stocking cap; the court struck the blue jacket from evidence. Therefore, the appellant can complain only of the admission of the gun and ammunition.

The house searched belonged to Mrs. Anthony; she had the authority to consent to a search of her house. Mrs. Anthony initially told the officers that they could come into her home, that she had nothing to hide. Officer Hays stated that Mrs. Anthony gave her permission to "look around in the room" (where the appellant was found). Officer Canady testified that Officer Hays asked Mrs. Anthony for permission to "search the residence" and that she said it would be "all right." Mrs. Anthony's testimony conflicts with that of the officers to the extent that when she was asked if she had consented to a search she replied, "He didn't tell me anything about searching. He asked me could he come in."

It is said in McCormick and Ray, Texas Evidence, Sec. 21 at p. 2, that:

"It is orthodox that all questions affecting the admissibility of evidence belong to the province of the trial judge. It follows that, when the admissibility of a given piece of evidence depends upon some preliminary question of fact, the existence or nonexistence of that fact is to be determined by the judge."

In the case before us the trial judge resolved the preliminary question of fact concerning a voluntary consent to search against the appellant and there is sufficient evidence to support his decision; the gun and ammunition were properly admitted in evidence. This ground of error is overruled.

■ The appellant next contends that the court erred in overruling his motion for an instructed verdict. He maintains that the evidence of guilt is insufficient. The case is a circumstantial one in that the complaining witness was unable to positively identify the appellant as one of the three men who robbed him. The circumstantial evidence of appellant's guilt is as follows: (1) twenty minutes after the robbery the appellant was in the company of the two men positively identified as two of the robbers; (2) a small caliber pistol was exhibited and fired during the robbery; a .22 caliber pistol containing five live and one spent round, which had been fired a short

time before, was found under the mattress where Paul Writt was sitting in Mrs. Anthony's home; appellant was found to have two live .22 rounds in his possession; (3) appellant and the Writt brothers called for a cab and then sent it away; (4) approximately $52 was taken in the robbery; appellant was found to have $17 in his possession, while the Writt brothers had $17 and $18—the sum, of course, being $52. We find the circumstantial evidence was sufficient to support the jury's verdict. This ground of error is overruled.

The judgment is affirmed.