Franklin Joseph RANSONETTE,
Appellant,

v.

The STATE of Texas, Appellee.

No. 51550.

Court of Criminal Appeals of Texas.

Oct. 6, 1976.

Rehearing Denied May 3, 1977.

Melvyn Carson Bruder and Barry P. Helft, Dallas, for appellant.

Henry M. Wade, Dist. Atty., W. T. Westmoreland, Jr., Douglas D. Mulder and Jim Burnham, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for kidnapping for extortion under Article 1177a, Vernon's Ann.P.C. Appellant and his brother Woodrow Ransonette were jointly tried before a jury which found them guilty and assessed punishment for each man at five thousand and five (5005) years in the Texas Department of Corrections. This Court affirmed the conviction of Woodrow Ransonette on April 30, 1975. *Ransonette v. State,* 522 S.W.2d 509, Appeal Dismissed, November 11, 1975, 423 U.S. 941, 96 S.Ct. 350, 46 L.Ed.2d 274.

Mrs. Amanda Mayhew Dealey testified that she returned to her apartment home in Dallas shortly after 5:00 p. m. on December 19, 1972. She stated that as she got out of her car in the parking lot behind the apartment complex she was met by two men, one of whom forced her at gunpoint into the front seat of a Chevrolet station wagon. She stated that as soon as she got into the

car the men placed blacked-out glasses over her eyes so that she could not see. She said that she was driven to a vacant house where she was handcuffed and blindfolded with gauze and tape. She further testified that she was released unharmed by the kidnappers during the early morning hours of December 22 after her father-in-law, Joseph M. Dealey, Sr., paid a ransom of $250,000. She stated that she was left bound and blindfolded in tall grass near a dead-end street, but that she was able to wriggle out of her bindings and blindfold in time to see a white van with a "dark bluish stripe" leaving the scene. Mrs. Dealey positively identified Woodrow Ransonette as the man who forced her into the car and with whom she communicated throughout her ordeal. She was unable to identify appellant as one of her abductors because of her blindfold.

Joseph M. Dealey, Sr. testified as to his contact with the kidnappers concerning the ransom demands. He stated that he notified the police and that agents of the Federal Bureau of Investigation entered into the case and that an Agent Brown later took over telephone communication with the kidnappers and eventually delivered the ransom.

Several employees of Southwestern Bell Telephone Company testified that they were involved in the tracing of phone calls originating from various exchanges in the Dallas area and terminating at the Dealey residence. It was established that most of the phone calls were originating from a group of public telephones in the area of Skillman Avenue at the intersection with Abrams Road.

Agents of the FBI testified that surveillance was set up in the Skillman Avenue area based on the information supplied by the telephone company employees. It was determined that the precise times of the kidnappers' telephone calls coincided with the appearance at the Skillman area telephones of a white 1971 Chevrolet van with a wide purple stripe. Photographs taken by the agents depict Woodrow Ransonette in one of the telephone booths with the white van parked nearby.

One of the agents positively identified Woodrow Ransonette as the man he saw get out of the van at one of the telephone booths. He also positively identified appellant as the driver of the van and stated that appellant stood "within a foot" of his brother during one of the kidnapper's telephone conversations with Agent Brown.

The State also introduced the testimony of a man who stated that he sold the station wagon used in the initial abduction, a 1963 Chevy II, to a man named Jerry Davis on December 19, 1972. The witness identified Woodrow Ransonette as the man who bought the car. Another witness testified that he rented a duplex to a man named Jerry Davis on December 19, 1972. This witness also identified Woodrow Ransonette as the man using the name of Jerry Davis. Mrs. Dealey testified that the duplex was the vacant residence where she was held captive. Another witness testified that he sold the white van to Franklin Ransonette.

The remainder of the evidence included testimony from various law enforcement officers about their involvement in the investigation of the case and circumstances surrounding the apprehension of the Ransonettes. It was developed that the license number on the van was traced to Franklin Ransonette. The van was found in the parking lot of a Dallas apartment house where Woodrow Ransonette resided. Officers knocked on the door of the apartment, identified themselves and were admitted. The Ransonettes were arrested, warned of their rights and searched. Woodrow executed a consent to search form and the apartment was searched. The $250,000 ransom, the blacked-out glasses and other evidence of the kidnapping were all found in the apartment. The officers testified that Woodrow made the spontaneous statement, "I told you we wasn't getting enough money. Now we're going to take the rap and I told you we were going to get caught."

█ We note at the outset that an examination of the record filed in this Court raises serious doubts as to whether or not the grounds of error raised in the briefs

filed in appellant's behalf are properly before us under Article 40.09, Vernon's Ann.C.C.P. It appears that appellant's trial counsel was granted two extensions of time for filing of appellant's brief, but when no brief was filed, the careful trial judge appointed other counsel to represent appellant on appeal. Appellant then filed a motion with the court to dismiss the newly-appointed counsel. The trial court denied the motion and a brief was filed in appellant's behalf by the appointed counsel. We recently held that an accused has the right to represent himself both at trial and on appeal. *Webb v. State,* 533 S.W.2d 780 (Tex.Cr.App.1976). However, it appears that appellant in his two supplemental pro se briefs has adopted the brief of his appointed counsel. We will, therefore, review all eight grounds of error raised in the three briefs.

In his first ground of error appellant contends that the trial court erred in denying his request to have the court make an *in camera* inspection of the prosecutor's file to determine if it contained evidence favorable to the appellant.

A copy of the motion has been made a part of the record on appeal. It first requests the court "to permit the defense . . . to call the prosecuting attorney . . . as a witness . . . to determine whether (he) has in (his) possession" any statements of witnesses who were not to be called by the State or any physical or tangible objects or other evidence which "may have any relevance to the guilt or innocence" of the appellant or which "could be in anywise construed as favorable" to appellant on the issue of guilt or punishment.

The motion then requests that "in the event . . . any of the foregoing evidence or information exists," the court should order the State to produce such evidence for inspection. In the alternative, the motion requests the trial court to make an *in camera* inspection of the prosecuting attorney's entire file and to conduct an interrogation of the prosecutor "to determine if such evidence exists." The record does not contain a transcript of the hearing on this motion and the notation of the court's order on the copy of the motion is unclear; however, both appellant's brief and the State's brief state that the motion was denied.

In support of his contention that such denial was error, appellant relies on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Means v. State,* 429 S.W.2d 490 (Tex.Cr.App.1968). The rule of law in those cases and a long line of subsequent decisions is that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment.

■ The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial. *Smith v. State,* 516 S.W.2d 415 (Tex.Cr.App.1974). The key elements which must be shown are (a) suppression of evidence by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

Appellant has satisfied none of the above requirements. His motion, in effect, admits that he knows of no material evidence favorable to his defense. Rather, he merely wishes to rummage through the State's file to see if there is anything which may have any relevance to his guilt or innocence. We have previously held such a request too broad to be effective. *Campos v. State,* 468 S.W.2d 81 (Tex.Cr.App.1971); *Bell v. State,* 442 S.W.2d 716 (Tex.Cr.App.1969).

The United States Supreme Court most recently addressed the *Brady v. Maryland* rule in the case of *United States v. Agurs,* decided June 24, 1976, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. There the Court noted that there was no significant difference between cases, such as the instant case, where there has been merely a general request for exculpatory matter and cases, such as *Agurs* in which there has been no request at all. Recognizing that there were

situations where the evidence is obviously of such substantial material value to the defense that elementary fairness requires it to be disclosed even without a specific request, the Court stated that "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

There is no constitutional requirement that the prosecutor must make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois,* supra. The prosecutor has not violated his constitutional duty of disclosure unless his omission is sufficiently significant to result in the denial of the defendant's right to a fair trial. *United States v. Agurs,* supra. Likewise, we know of no constitutional obligation of the trial court to peruse the prosecutor's file for exculpatory evidence in the absence of a specific request supported by some showing that such evidence exists.

Appellant's first ground of error is overruled.

In his second ground of error appellant contends that the trial court erred in failing to charge the jury on the law of circumstantial evidence. The appellant timely presented his requested instruction on circumstantial evidence which the court denied. The court charged the jury on the law of principals and instructed them that mere presence of a party at or near the scene of the commission of an offense does not constitute one as a principal.

Although it is true that Mrs. Dealey was not able to identify appellant as one of her abductors, the evidence does reflect that appellant was arrested with his brother in the latter's apartment only hours after the release of Mrs. Dealey. All of the instrumentalities of the kidnapping were found in the apartment, including the ransom money which had been divided into two sums and placed in two separate pieces of luggage. There is also the incriminating statement made by Woodrow Ransonette to appellant at the time of the arrest. Even more in-

criminating was the positive identification of appellant as one of the two occupants of the ubiquitous white van with the purple stripe. This identification took place at one of the Skillman Avenue telephones during a conversation between the kidnappers and Agent Brown only two hours prior to Mrs. Dealey's release. Mrs. Dealey also saw the van leave the release site.

Appellant was charged with acting together with his brother in the kidnapping of Mrs. Dealey for ransom. Arguably, there is no direct evidence of the main fact. There is no direct evidence that appellant was involved in the initial abduction. Nor is there direct evidence that he made any of the ransom calls or that he was involved in the physical restraint or detention of Mrs. Dealey. There is direct evidence that he was the owner and driver of the van associated with the kidnapping. In the absence of any other charge or instruction, it is clearly error to refuse a requested charge on circumstantial evidence. *Moore v. State,* 531 S.W.2d 140 (Tex.Cr.App.1976); *Farris v. State,* 496 S.W.2d 55 (Tex.Cr.App.1975).

The issue then is whether the charge on the law of principals adequately protected appellant's rights in the absence of the charge on circumstantial evidence. Article 36.19, Vernon's Ann.C.C.P.

We addressed a similar situation in *Dickson v. State,* 492 S.W.2d 267 (Tex.Cr.App. 1973). In that case there was direct evidence of the defendant's association with the robbers, and his presence at the scene of the crime coincided exactly with that of the robbers. Although the complaining witness could not state which of the five men who entered the store actually shot and robbed him, he testified that the defendant entered the store with the men and left with them after the money had been taken. We held that there was no error in refusing the requested instruction on circumstantial evidence. The instruction on the law of principals adequately protected the defendant's rights.

In *Morr v. State,* 507 S.W.2d 551 (Tex.Cr. App.1974) there was direct evidence that a burglary had been committed by a "blonde-

haired individual" who escaped. The defendant's connection with the burglary consisted of his presence at the scene and furtive gestures. The court charged the jury on the law of principals and instructed them that mere presence is not sufficient to constitute one as a principal. We held that even if the refusal to charge on circumstantial evidence could be construed as error, no harm was shown.

The instant case, like *Dickson,* supra, contains direct evidence of appellant's close association with Woodrow Ransonette. Like *Morr,* supra, the instant case contains evidence which places appellant at the scene of the ransom calls and in the presence of his brother, with instrumentalities of the crime, at the time of their arrest. We find that the appellant's rights were adequately protected by the charge as given. *Morr v. State,* supra; *Dickson v. State,* supra; *Helms v. State,* 493 S.W.2d 227 (Tex.Cr.App.1973).

Appellant's second ground of error is overruled.

■ In his third ground of error appellant contends that the trial court erred in overruling his motion to sever pursuant to Article 36.09, Vernon's Ann.C.C.P. The same contention raised by appellant's brother was overruled in *Ransonette v. State,* 522 S.W.2d 509 (Tex.Cr.App.1975). No evidence was offered in support of the motion and no error is shown in the absence of such evidence offered at the time the motion was presented and overruled. Article 36.09, Vernon's Ann.C.C.P.; *Ransonette,* supra; *Hawkins v. State,* 509 S.W.2d 607 (Tex.Cr.App.1974); *Robinson v. State,* 449 S.W.2d 239 (Tex.Cr.App.1969).

Appellant's third ground of error is overruled.

■ In his fourth ground of error appellant contends that during jury argument the prosecutor made an improper reference to his failure to make a statement at the time of his arrest. The argument referred to was as follows:

" . . . She identified Woodrow Ransonette as the one that actually put her in the car. The other one, you know, was quite silent, and this makes sense with what Jack Barnett told you, because Franklin didn't say a word out there at the arrest. He said Woodrow was doing all the talking. Like I said, Franklin's been down this road before so he kept his mouth shut."

The remarks refer to the testimony earlier in the trial given by the arresting officers that Woodrow Ransonette made an incriminating statement while Franklin said nothing. No objection was voiced at that time and no objection was raised during the prosecutor's argument. Nothing is presented for review. *Gibson v. State,* 516 S.W.2d 406 (Tex.Cr.App.1974); *Shumake v. State,* 502 S.W.2d 758 (Tex.Cr.App.1973).

Appellant's fourth ground of error is overruled.

■ In his fifth ground of error appellant's appointed counsel on appeal contends that appellant was denied effective assistance of counsel by his retained trial counsel due to his failure to present final arguments to the jury at the punishment phase of the trial. A review of the entire record in this case demonstrates that appellant's counsel ably represented him throughout this trial. The waiver of argument was trial strategy. Appellate counsel might have tried the case differently, but that does not show inadequate representation. *Rockwood v. State,* 524 S.W.2d 292 (Tex.Cr.App.1975). We find no misconduct of counsel which amounts to a breach of legal duty to faithfully represent an accused's interests. *Hunnicutt v. State,* 531 S.W.2d 618 (Tex.Cr.App.1976); *Martin v. State,* 493 S.W.2d 866 (Tex.Cr.App.1973); *Farmer v. State,* 491 S.W.2d 133 (Tex.Cr.App.1973).

Appellant's fifth ground of error is overruled.

■ The three grounds of error set out in appellant's supplemental pro se briefs will be designated as grounds of error six, seven, and eight. In appellant's sixth ground he challenges the sufficiency of the evidence. Although the record in this appeal

contains only the transcript of proceedings in behalf of appellant, we have thoroughly re-examined the fifteen hundred pages of testimony and exhibits in Cause No. 49,808, *Ransonette v. State,* supra. Viewing the evidence in the light most favorable to the State, we find that the evidence, as briefly summarized above, supports the jury's finding of guilty.

Appellant's sixth ground of error is overruled.

In his seventh ground of error appellant contends that the trial court erred in denying his motion for a change of venue. This contention has already been decided adversely to appellant in *Ransonette v. State,* supra.

 In his eighth ground of error appellant contends that it was error to admit into evidence the items seized at his brother's apartment during their arrest. Appellant's brother consented to the search. Appellant cannot now challenge its legality. *Adams v. State,* 537 S.W.2d 746 (Tex.Cr. App.1976).

Appellant's eighth ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge (dissenting).

I dissent on the grounds there was no direct evidence adduced against the appellant herein and a request for a charge on circumstantial evidence was denied, thus depriving the appellant herein of a valuable right and sub silentio overruling 125 years of law in this State.

The majority agree that the failure to give the charge was "clearly error." In view of the five thousand five (5005) year sentence assessed by the jury, I cannot agree that the error was harmless.

## OPINION ON THE APPELLANT'S MOTION FOR REHEARING

DALLY, Commissioner.

 On the appellant's motion for rehearing we have reconsidered ground of error number two, in which it was asserted that the trial court erred in refusing to submit to the jury the appellant's requested instruction on the law of circumstantial evidence. On original submission we held that the court's refusal to submit the requested charge on circumstantial evidence was clearly error, but that the appellant's rights were adequately protected because the court submitted a charge on the law of principals. A charge on the law of principals is a State's charge; it does not protect the defendant's rights. An instruction on the law of principals does not eliminate the necessity for an instruction on circumstantial evidence if circumstantial evidence is relied upon to establish the appellant's guilt as a principal. *McBride v. State,* 486 S.W.2d 318 (Tex.Cr.App.1972); *Scelles v. State,* 172 Tex.Cr.R. 474, 358 S.W.2d 623 (1962). However, we now find that there was direct evidence of the appellant's participation in the commission of the offense and that the court's refusal to submit the requested charge on circumstantial evidence was not error.

Mrs. Dealey could not identify the appellant as the man who was with Woodrow Ransonette when she was abducted by Woodrow Ransonette and another man, but this offense was not completed when she was abducted. The offense was a continuing offense until after the ransom had been paid and Mrs. Dealey had been released. Before Mrs. Dealey was released the appellant was identified by Will H. Griffin, an FBI agent, as the driver of a van which took his brother Woodrow Ransonette to public telephone booths on two occasions. On these occasions Woodrow Ransonette had a telephone conversation with Charles T. Brown who he did not know was an FBI agent.

While Woodrow Ransonette was engaged in acts which constituted a part of the offense for which the appellant and Woodrow Ransonette were indicted, the appellant was identified as the man who was aiding and abetting his brother Woodrow Ransonette by taking him to the telephone booths

and acting as a lookout while the calls were made. The appellant stood within one foot of Woodrow Ransonette while the telephone calls were made and there was testimony the appellant could have heard both parties to the telephone conversations. There was direct evidence of appellant's participation in the commission of the offense.

 A charge on circumstantial evidence is required only where the evidence of the main fact essential to guilt is purely and entirely circumstantial. See e. g. *Wilson v. State,* 154 Tex.Cr.R. 59, 225 S.W.2d 173 (1949). A charge on circumstantial evidence is necessary only when the State's case depends entirely upon circumstances for conviction. See e. g. *Nailing v. State,* 152 Tex.Cr.R. 161, 211 S.W.2d 757 (1948); *Wells v. State,* 134 Tex.Cr.R. 412, 115 S.W.2d 658 (1938). An instruction as to circumstantial evidence need not be given where the State relies only in part on circumstantial evidence, *Lawler v. State,* 110 Tex.Cr.R. 460, 9 S.W.2d 259 (1927); *Coleman v. State,* 90 Tex.Cr.R. 297, 235 S.W. 898 (1921), even though the State relies on a chain of circumstances that may be considered the major part of the evidence on which the State relies for conviction. *Dodd v. State,* 149 Tex.Cr.R. 156, 192 S.W.2d 263 (1946). See 31 Tex.Jur.2d 682–683, Instructions, Sec. 123; *Morris v. State,* 402 S.W.2d 161 (Tex.Cr.App.1966); *Russell v. State,* 396 S.W.2d 117 (Tex.Cr.App.1965).

 Whether the appellant knew what his brother was doing when he made the telephone calls and whether the appellant had the required intent to make his acts in aiding and abetting his brother, criminal acts are matters which need not be shown by direct evidence but may be shown by circumstantial evidence. *Davis v. State,* 516 S.W.2d 157 (Tex.Cr.App.1974); *Barber v. State,* 462 S.W.2d 33 (Tex.Cr.App.1971); *Schwartz v. State,* 172 Tex.Cr.R. 326, 357 S.W.2d 393 (1962).

In *Blankenship v. State,* 481 S.W.2d 147 (Tex.Cr.App.1972) the main authority relied upon by the appellant, no one could positively identify Blankenship as the man in the car near the scene of the robbery. In this case Agent Griffin identified the appellant as the man aiding and abetting his brother during the time the offense was being committed.

The appellant's motion for rehearing is denied.

Opinion approved by the Court.

ROBERTS, Judge (dissenting).

I agree with the majority opinion on rehearing in several respects. First, I enthusiastically endorse the majority's holding that a charge on the law of principals is a State's charge and does not protect a defendant's rights. This is because a charge on principals makes it *easier* for the State to convict. It follows, as the majority recognizes, that a trial court may not substitute a charge on principals—or parties, under the new Penal Code—when a charge on circumstantial evidence is mandated.

I also agree with the statements of the majority that:

"A charge on circumstantial evidence is necessary only when the State's case depends entirely upon circumstances for conviction. See e. g. *Nailing v. State,* 152 Tex.Cr.R. 161, 211 S.W.2d 757 (1948); *Wells v. State,* 134 Tex.Cr.R. 412, 115 S.W.2d 658 (1938). An instruction as to circumstantial evidence need not be given where the State relies only in part on circumstantial evidence. *Lawler v. State,* 110 Tex.Cr.R. 460, 9 S.W.2d 259 (1927); *Coleman v. State,* 90 Tex.Cr.R. 297, 235 S.W. 898 (1921), even though the State relies on a chain of circumstances that may be considered the major part of the evidence on which the State relies for conviction. *Dodd v. State,* 149 Tex.Cr.R. 156, 192 S.W.2d 263 (1946). . . . " *Ante,* at 43.

However, the majority's statement of these rules is somewhat ambiguous. What the authorities relied upon hold is that where there is *both* direct and circumstantial evidence of the main fact to be proved, no circumstantial evidence charge is required. See *Dodd, supra,* 192 S.W.2d at 264. The

majority opinion should *not* be read as holding that no circumstantial evidence charge is required where one aspect of the main fact is proved by direct evidence and another by circumstantial evidence; in such a case a circumstantial evidence charge *is* required. See *Coleman,* supra, 235 S.W. at 901.

What I cannot agree with is the majority's application of these rules of law to the facts of this case. I believe that a circumstantial evidence charge was required and the failure to submit such a charge was reversible error.

The majority relies in part on the testimony of Charles Brown, an FBI agent, who identified the voice of appellant's co-defendant as the voice of the person who made the kidnap demands over the telephone. As the majority held in *McInturf v. State,* 544 S.W.2d 417 (Tex.Cr.App.1976), this was direct evidence of the co-defendant's participation in the offense.[1] However, it is not direct evidence of the appellant's guilt; it is merely evidence of a secondary fact from which appellant's guilt may be inferred. *Anderson v. State,* 85 Tex.Cr.R. 411, 213 S.W. 639 (1919); *Burleson v. State,* 132 Tex.Cr.R. 2, 101 S.W.2d 1020 (1936), followed in *McCormick v. State,* 168 Tex.Cr.R. 489, 329 S.W.2d 436 (1959), and cited with approval in *Blankenship v. State,* 481 S.W.2d 147 (Tex.Cr.App.1972).

The majority also relies upon appellant's presence near the phone booth at the time appellant's co-defendant made the calls to Brown and on the fact that appellant drove his co-defendant to and from public phone booths. However, under our previous holdings, this kind of evidence is also purely circumstantial.

Thus, in *Anderson v. State,* supra, a murder case in which the fatal shot was fired by the defendant's son, the evidence was that the defendant had quarreled with the deceased the day before the killing occurred. The next day the quarreling continued, with the deceased and his brother on one side and the defendant and his son on the other. Later that day the deceased and his brother stopped their buggy on the side of the road and were getting out of the buggy when the defendant and his son approached in their car. The defendant was driving; as the car passed within four or five feet of the buggy, the defendant's son fired the fatal shot.

In reversing because of the trial court's failure to give a charge on circumstantial evidence, the *Anderson* Court held that it is "well established that, when the actual killing is done by another, the mere presence of the accused does not deprive him of the privilege of having his criminal connection with the offense determined by the rule of circumstantial evidence." *Anderson v. State,* supra, 213 S.W. at 640. The Court observed that a charge on principals had been given. *Id.,* at 640. The Court also recognized, but found inapplicable, the rule that

"'Where the facts proven are in such close relation to the main fact as to make them equivalent to direct testimony, a charge on circumstantial evidence is unnecessary.'" *Id.,* at 641.

See also *Tipton v. State,* 95 Tex.Cr.R. 205, 253 S.W. 301 (1923).

The rule in *Anderson* was followed in *Burleson v. State,* supra, a robbery case. In that case the defendant and one Jordan agreed to deliver to the complainant two hundred dollars' worth of counterfeit money in exchange for sixty-five dollars. On the day of the robbery the complainant agreed with the defendant that the complainant would give Jordan the sixty-five dollars that night even though the defendant and Jordan would not be able to deliver the counterfeit money until the following day. The defendant left the complainant, and shortly thereafter Jordan came alone to the complainant's room and robbed him of the sixty-five dollars at gunpoint.

---

1. I would hold that this is not even direct evidence of the co-defendant's guilt. See the dissenting opinion in *McInturf v. State,* 544 S.W.2d at 420. However, a majority of this Court held otherwise in *McInturf,* and I will concede that holding for the purposes of this discussion.

The complainant followed Jordan as he left the room. Jordan got into an automobile with the defendant and the two men drove away together. The Court held that the State's case was "manifestly" reliant upon circumstantial evidence and reversed because of the trial court's failure to charge on circumstantial evidence. See also *Burrell v. State,* 18 Tex. 713 (1857); *Ellsworth v. State,* 92 Tex.Cr.R. 334, 244 S.W. 147 (1922); *Denny v. State,* 473 S.W.2d 503 (Tex.Cr.App.1971).

Similarly, in the case before us the evidence against this appellant is manifestly circumstantial. It must be remembered that direct evidence is that which directly demonstrates the main fact to be proved, while circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the main fact. *Crawford v. State,* 502 S.W.2d 768 (Tex.Cr.App. 1973).

In this case the main fact to be proved is that appellant was a principal offender. There is direct proof that appellant's co-defendant committed the offense. There is also direct evidence that the appellant was present near the co-defendant during part of the time that the offense was being committed. And there is direct evidence that appellant was driving the motor vehicle which helped convey the co-defendant during the commission of the offense.

But these are clearly like the facts in *Anderson* and *Burleson*: minor, or secondary, facts from which an inference must be drawn. None of these facts, either separately or taken together, *directly* prove that appellant was guilty as a principal.

Therefore, a circumstantial evidence charge should have been given. The failure to do so was reversible error.